12 A.3d 1255

Babak NAJAFI

v.

MOTOR VEHICLE ADMINISTRATION.

No. 44, Sept. Term, 2010.

Court of Appeals of Maryland.

Jan. 31, 2011.

Andrew V. Jezic and Rand W. Lucey (Jezic, Krum & Moyse, LLC, Wheaton, MD), on brief, for petitioner.

Damon L. Bell, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, on brief) Glen Burnie, MD, for respondent.

Argued before: BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

In the present judicial review action, Babak Najafi, Petitioner, asks this Court to determine that his driver's license should not have been suspended for his refusal to submit to a chemical breath test, because he allegedly was not given a reasonable opportunity to consult with counsel prior to making a decision of whether to submit to the test and because, according to Najafi, he never affirmatively refused to take the

test. Administrative Law Judge Kathleen Chapman had suspended Najafi's driver's license for 120 days, after determining that Najafi was subject to administrative sanctions, stemming from Najafi's refusal to submit to a chemical breath test, after being detained on suspicion of driving under the influence of alcohol. Najafi then filed a Petition for Judicial Review in the Circuit Court for Montgomery County. After the Circuit Court Judge affirmed the ALJ's decision, Najafi filed a Petition for Writ of Certiorari, which we granted, to address the following questions:

1. Did the circuit court err in its affirmance of the decision of the ALJ, finding that the Petitioner's right to consult with counsel prior to an election on submitting to a chemical breath test, as established in *Sites v. State,* 300 Md. 702 [481 A.2d 192] (1984), did not apply to the administrative license suspension hearing, and in denying his motion for "no action" on those grounds?

2. Did the circuit court err in affirming the decision of the ALJ, finding that the Petitioner had refused to submit to a chemical breath test when: A) there is no evidence that the Petitioner ever refused; and B) the police officer assumed that the Petitioner had refused after the Petitioner was unable to reach an attorney with one attempted phone call?

*Najafi v. MVA,* 415 Md. 38, 997 A.2d 789 (2010). We shall hold that were, in the context of an administrative license suspension hearing, an individual to have a right to consult counsel prior to an election on whether to submit to a chemical breath test, in the present case, the Petitioner was afforded a reasonable opportunity to consult counsel and, further, there was substantial evidence that he refused to submit to a chemical breath test.

In 2009, Najafi had been detained on suspicion of driving under the influence of alcohol by a Montgomery County police officer and subsequently had his license suspended for refusing to submit to a breathalyzer test. Najafi requested an administrative hearing, pursuant to Section 16–205.1(f) of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol.,

2008 Supp.),[1] during which he was the only one to testify. The Motor Vehicle Administration ("MVA") presented Najafi's DR–15A[2] and DR–15[3] forms; the detaining officer was not present at the hearing.

---

1. Section 16–205.1(f) of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol., 2008 Supp.), in effect at the time of this incident, provided, in pertinent part:
 (f) *Notice and hearing on refusal to take test; suspension of license or privilege to drive; disqualification from driving commercial vehicles.*— (1) Subject to the provisions of this subsection, at the time of, or within 30 days from the date of, the issuance of an order of suspension, a person may submit a written request for a hearing before an officer of the Administration if:
 (i) The person is arrested for driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title; and
 (ii) 1. There is an alcohol concentration of 0.08 or more at the time of testing; or
 2. The person refused to take a test.
 Unless otherwise noted, all references to Section 16–205.1 of the Transportation Article are to Maryland Code (1977, 2006 Repl.Vol., 2008 Supp.). The current iteration of Section 16–205.1 of the Transportation Article, Maryland Code (1977, 2009 Repl.Vol.), contains identical language.

2. The DR–15A Form, also referred to as an "Officer's Certification and Order of Suspension," contains general factual information about the suspected drunk driver and the incident giving rise to his detention. The form, which is certified by the police officer, also contains a place for the officer to indicate whether the DUI suspect refused to take a breathalyzer test. *See MVA v. Delawter*, 403 Md. 243, 249 n. 4, 941 A.2d 1067, 1071 n. 4 (2008) (explaining the function of the DR–15A form) (citations omitted).

3. The DR–15 Form, also known as the "Advice of Rights," is derived from Section 16–205.1(b) of the Transportation Article. *See Delawter*, 403 Md. at 246 n. 3, 941 A.2d at 1069 n. 3. At the time of the events in the present case, the DR–15 Form provided, in pertinent part:
 **ADVICE OF RIGHTS**—(§ 16–205.1 of Maryland Transportation Article) DR–15 (10–08)
 You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requiring that you be asked to submit to a test under § 16–205.1 of the Maryland Vehicle Law. In this situation, the law deems that you have consented to take a test to measure

Najafi's counsel made a motion that "no action"[4] be taken by the ALJ, contending that Najafi was denied a reasonable

---

the alcohol concentration or drug or controlled dangerous substance content in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person.

**Suspension of Your Maryland Driver's License or Driving Privilege:** If you refuse to submit to the test, or submit to the test and the result indicates an alcohol concentration of 0.08 or more at the time of testing, your Maryland driver's license will be confiscated, you will be issued an Order of Suspension and, if eligible, a temporary license valid for 45 days. The following periods of suspension shall be imposed against your license or privilege to drive in Maryland:

**If your test result is an alcohol concentration of at least 0.08 but less than 0.15: The suspension will be 45 days for a first offense and 90 days for a second or subsequent offense.**

**If your test result is an alcohol concentration of 0.15 or more: The suspension will be 90 days for a first offense and 180 days for a second or subsequent offense.**

**If you refuse to submit to a test: The suspension will be 120 days for a first offense and one (1) year for a second or subsequent offense.**

\* \* \*

**Modification of the Suspension or Issuance of a Restrictive License:** **If your test result is an alcohol concentration of 0.08 but less than 0.15:** The suspension may be modified or a restrictive license issued at a hearing in certain circumstances.

**If you refuse a test, or take a test with a result of 0.15 or more: You will be in eligible for modification of the suspension or issuance of a restrictive license, unless you participate in the Ignition Interlock System Program under § 16–404.1 of the Maryland Vehicle Law.**

\* \* \*

**You Have the Right to Request an Administrative Hearing:** You may request an Administrative Hearing at any time within 30 days of the date of the Order of Suspension to show cause why your driver's license or privilege should not be suspended. You must request a hearing within 10 days of the date of the Order of Suspension to insure that your privilege to drive is not suspended prior to your hearing....

\* \* \*

**Certification:** I, the Undersigned Police Officer, certify that I have advised the driver of the above stated Advice of Rights, including the sanctions imposed for: 1) refusal to take a test; 2) a test resulting in an alcohol concentration of at least 0.08 but less than 0.15; 3) a test resulting in an alcohol concentration of 0.15 or more; and 4) disqualifications for persons holding a commercial driver's license.

4. In an administrative license suspension hearing, a "[f]avorable decision" is defined as a "dismissal or *no action* decision by the administra-

opportunity to consult counsel because, at the police station, the officer failed to give Najafi privacy when he attempted to contact his attorney on the phone. The ALJ denied the motion, determining that, in the context of an administrative hearing, there is no right for an individual to consult with counsel before making an election of whether to submit to a chemical breath test, and that, even if there were a right, Najafi was given a reasonable opportunity to contact counsel:

> The right to counsel, which is found at the Fourteenth Amendment, the due process right, the right to have an attorney, does not exactly, necessarily extend to administrative proceedings.... The officer's not required then to make sure that the person's made an election for an attorney, whether they did or not. And so while Mr. Najafi had certainly asked for an attorney, this police officer wasn't required, for purposes of an administrative hearing to allow you the opportunity to talk to an attorney and yet the officer still did that. And you did have the opportunity to talk to an attorney. It is unfortunate that [Najafi's attorney] was not available to chat with you that day. And it's also unfortunate that all you got was his answering machine. At that point, the request for an attorney was made; the officer gave you your cell phone, you asked for yellow pages. There was some confusion over the yellow pages, but he's handed you yellow pages, and you made the phone call. You actually made it through to the office, you just didn't make it to a live voice....
>
> [B]ecause there is no absolute right to an attorney in the first place, there's no absolute right to privacy for that attorney. And then, even if he did beyond that point, he didn't get to talk to a live attorney. There was no live attorney on the other end of that line. Even if he had privacy, he wasn't going to have a conversation short of,

---

tive law judge...." COMAR 28.03.01.02(B)(2)(a)(i) (emphasis added). *See also* Leonard R. Stamm, Maryland DUI Law 63 (2008–2009 ed.) (describing a motion for "no action" as a motion that a driver can make after the MVA has presented its evidence and after all evidence has been presented).

"hey I've been arrested and I don't know what to do and I don't know which way I'm going to elect on this breathalyzer," and at that point, he needed to make an election and the officer doesn't need to guess what that election is going to be.

Thereafter, the ALJ made the following findings regarding the traffic stop that led to Najafi's detainment and eventual license suspension:

[T]he officer that stopped or detained you on June 12th, 2009 at 1:16 a.m. had reasonable grounds to believe that you were driving or attempting to drive a motor vehicle while under the influence or impaired by alcohol. When you were stopped for not stopping at a stop sign and then the officer observed you cross over lane markings on numerous occasions. The officer did stop to interact with you and when he did, he did note evidence of use of alcohol in that he wrote in his report that there was strong odor of alcoholic beverage coming from your person, you had blood shot, watery eyes, your clothes appeared to be disheveled and when he asked you to perform standard field sobriety tests, it was the officer's observations that those tests did indicate a level of intoxication. You were asked to submit to a preliminary breath test [5] You did and it came back indicating an alcohol concentration level of .12.

ALJ Chapman then found that, once Najafi was detained and taken back to the police station, Najafi was properly advised of the administrative sanctions that he could face should he refuse to submit to a breathalyzer test by his being provided the DR–15 Advice of Rights Form and having read it twice:

---

5. A preliminary breath test may be requested by a police officer who has reasonable grounds to believe that an individual has been driving a vehicle under the influence of alcohol and may be used by the officer as a guide in deciding whether an individual should be detained. *See* Section 16–205.2 of the Transportation Article, Maryland Code (1977, 2006 Repl.Vol.).

Based upon that, the officer did fully advise you of the administrative sanctions to be imposed. As I had mentioned earlier, the officer may either do one of two things. Hand you the form in order for you to read or in the alternative he may read the form. Here the record would reflect that you read the form and in fact you said you read the form twice.

Thereafter, the ALJ found that, after being properly advised of the possible administrative sanctions, Najafi did, in fact, refuse to submit to the breathalyzer test:

I also find ... that you did refuse to take the breathalyzer test when it was offered to you and that in doing so it was considered failure to make an election.

With regard to the conflict between Najafi's testimony at the hearing that he did not refuse to take the breathalyzer test and the officer's certifications on the DR–15 Advice of Rights Form that he did refuse, the ALJ observed:

In these hearings where there is a conflict concerning your testimony and the record before me, and that there has been no request for a subpoena for the officer to come and testify prior to the hearing. The court has indicated in the case of [*MVA v.*] *Karwacki* [, 340 Md. 271, 666 A.2d 511 (1994) ] that when I am faced with a confined set of conflicting evidence such as that of the Advice of Rights form and your contrary testimony, that I am allowed to make a credibility determination on which I believe is more credible. Now here today, I have taken into account all of the testimony you have provided and in doing so I matched it against the Advice of Rights form and they're not entirely inconsistent from one to the other. The only difference is your interpretation of what may have occurred that night. And that is that you wanted privacy to speak to an attorney, you didn't get it and at that point things fell apart. And based on your testimony and based on the documents before me, I would find that an election was not made and that it was reasonable for the officer to make the inference that you refused to take the breathalyzer at that time. Now

based on that, I would conclude that you violated Section 16–205.1 of the Transportation Article.

In determining that Najafi was subject to sanctions under Section 16–205.1 of the Transportation Article,[6] the ALJ suspended Najafi's driver's license for 120 days but modified the sanction so that Najafi could have an ignition interlock system placed in his car.[7] Najafi filed a Petition for Judicial Review of the ALJ's decision in the Circuit Court for Montgomery County, pursuant to Section 10–222(a) of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.).[8] In

---

6. Section 16–205.1(f)(8) of the Transportation Article provided, in pertinent part:

(8)(i) After a hearing, the Administration shall suspend the driver's license or privilege to drive of the person charged under subsection (b) or (c) of this section if:

1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. There was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. The police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed; and

4. A. The person refused to take the test; or

B. A test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.08 or more at the time of testing.

7. Section 16–404.1 of the Transportation Article, Maryland Code (1974, 2006 Repl.Vol., 2008 Supp.), provides, in pertinent part:

§ 16–404.1. Ignition Interlock System Program.

\* \* \*

(b) *In general.—*

\* \* \*

(3) An individual may be a participant if:

\* \* \*

(iv) The Administration modifies a suspension or issues a restrictive license to the individual under § 16–205.1(b)(3)(vii) or (n)(2) or (4) of this title.

8. Pursuant to the Maryland Administrative Procedure Act, Section 10–222(a) of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.), provides, in pertinent part:

affirming the ruling below, Judge Marielsa Bernard of the Circuit Court for Montgomery County determined that there was substantial evidence to support ALJ Chapman's findings that Najafi was given a reasonable opportunity to contact counsel and that he had refused to elect to take a breathalyzer test.

In *Maryland Aviation Administration v. Noland*, 386 Md. 556, 873 A.2d 1145 (2005), Judge John C. Eldridge, writing for this Court, explicated the proper standard of review of an adjudicatory decision by an administrative agency, stating:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law."

In applying the substantial evidence test, a reviewing court decides "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court "must review the agency's decision in the light most favorable to it; ... the agency's decision is prima facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to "substitute its judgment for the expertise of those persons who constitute the administrative agency." Even with regard to some legal issues, a degree of deference should often be accorded

§ 10–222. Judicial review.
(a) *Review of final decision.*—(1) Except as provided in subsection (b) of this section, a party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section.

the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected. *Id.* at 571–72, 873 A.2d at 1154–55 (footnote omitted) (citations omitted). *See also* Section 10–222(h) of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.).[9]

With regard to the first question presented, Najafi argues that a violation of the right to consult counsel prior to making an election of whether to submit to a chemical breath test, applicable in a criminal case under *Sites v. State*, 300 Md. 702, 481 A.2d 192 (1984), is also applicable in an administrative license suspension hearing as grounds to invalidate a refusal to take a breathalyzer test or to otherwise grant a motion for no action. He contends that, during the incident in question, his right to have a reasonable opportunity to consult counsel was violated, due to the police officer's alleged failure to give Najafi privacy when he attempted to contact his counsel.

The MVA argues, conversely, that the right to counsel, as articulated in *Sites*, is only applicable in criminal matters and does not apply in the context of an administrative license suspension hearing. The MVA further contends that, even if there were such a right, in the administrative context, there is

---

**9.** Section 10–222(h) of the State Government Article, Maryland Code (1984, 2009 Repl.Vol.), provides that a court, upon judicial review of an administrative agency's decision, may take the following actions:

 (1) remand the case for further proceedings;
 (2) affirm the final decision; or
 (3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
 (i) is unconstitutional;
 (ii) exceeds the statutory authority or jurisdiction of the final decision maker;
 (iii) results from an unlawful procedure;
 (iv) is affected by any other error of law;
 (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or
 (vi) is arbitrary or capricious.

no remedy available for an alleged violation of a right to consult counsel. Nonetheless, MVA asserts, Najafi was clearly afforded a reasonable opportunity to consult counsel and, furthermore, any issue regarding privacy is moot because Najafi never spoke with an attorney during the incident in question.

Section 16–205.1 of the Transportation Article governs the administrative license suspension process and embodies the concept that individuals who drive vehicles in Maryland are deemed to have consented to take a chemical breath test should they be detained on suspicion of driving under the influence of alcohol, stating, in pertinent part:

> Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented ... to take a [chemical breath] test [to determine alcohol concentration] if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol. . . .

Section 16–205.1(a)(2). Once a person is detained for suspicion of driving under the influence of alcohol, the officer must advise the person of the possible administrative sanctions for refusing to take a chemical breath test. Section 16–205.1(b)(2). If the person refuses to take the test, the police officer shall, *inter alia*, seize the person's driver's license and personally serve an order of suspension on the person. Section 16–205.1(b)(3). Although Section 16–205.1 of the Transportation Article does not address whether an individual has a right to consult counsel before deciding whether to submit to a chemical breath test, we have had occasion to broach this subject in *Sites v. State*, 300 Md. 702, 481 A.2d 192 (1984).

In *Sites*, we addressed whether the results of a chemical breath test should have been suppressed in a criminal trial on the grounds that the defendant had not been afforded a right to consult counsel before deciding whether to submit to the test. Sites was stopped for drunk driving, and at the scene, the officer read Sites a standardized statement of his rights

and the penalties for Sites's refusal to submit to a chemical breath test under the implied consent statute, Section 16–205.1 of the Transportation Article, Maryland Code (1977, 1984 Repl.Vol.). Sites agreed to take a chemical breath test and signed the consent form.

According to Sites's testimony at trial, then, after arriving at the police station, he asked to speak with his attorney three times, but the arresting officer informed him that he had no right to counsel. A chemical breath test was administered, resulting in a finding of 0.17 percent blood alcohol content. Sites was thereafter formally charged with driving while intoxicated. In his criminal trial, Sites filed a pre-trial motion to suppress the results of the test on the grounds that he was denied his right to counsel prior to the administration of the test, but the circuit court judge denied his motion, finding that, as a matter of law, Sites was not entitled to an attorney at that time. Sites was convicted by a jury of driving while intoxicated. We granted certiorari prior to consideration by the Court of Special Appeals.

We determined that, under the Due Process Clause of the Fourteenth Amendment[10] and Article 24 of the Maryland Declaration of Rights,[11] in a criminal case, a drunk driving suspect should be afforded a reasonable opportunity to communicate with counsel prior to submitting to a chemical sobri-

---

**10.** The Due Process Clause, found in Section One of the Fourteenth Amendment to the United States Constitution, provides:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**11.** Article 24 of the Maryland Declaration of Rights provides:

That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land.

ety test, as long as it does not substantially interfere with the timely and efficacious administration of the testing process:

Considering all the circumstances, we think to unreasonably deny a requested right of access to counsel to a drunk driving suspect offends a sense of justice which impairs the fundamental fairness of the proceeding. We hold, therefore, that the due process clause of the Fourteenth Amendment, as well as Article 24 of the Maryland Declaration of Rights, requires that a person under detention for drunk driving must, on request, be permitted a reasonable opportunity to communicate with counsel before submitting to a chemical sobriety test, as long as such attempted communication will not substantially interfere with the timely and efficacious administration of the testing process. In this regard, it is not possible to establish a bright line rule as to what constitutes a reasonable delay, although the statute itself mandates that in no event may the test be administered later than two hours after the driver's apprehension.

*Sites*, 300 Md. at 717–18, 481 A.2d at 200. *See also McAvoy v. State*, 314 Md. 509, 519, 551 A.2d 875, 880 (1989) (observing that, in *Sites*, we recognized "neither a right of counsel in the Fifth nor Sixth Amendment sense, but rather a deprivation of the right of due process by the unnecessary denial of a specific request for counsel"). We held, nonetheless, that "there [wa]s nothing in the record to show whether, in the circumstances, the refusal of the police to permit a phone call (if in fact that occurred) constituted a violation of Sites' due process right," and thus declined to suppress the results of the breathalyzer test. *Sites*, 300 Md. at 718–19, 481 A.2d at 200.

The implications of *Sites* were discussed in *MVA v. Atterbeary*, 368 Md. 480, 796 A.2d 75 (2002), in which we explored whether an individual's invocation of his or her right to consult counsel could be treated as a refusal of the detainee to take a chemical sobriety test, in the context of an administrative license suspension hearing. In *Atterbeary*, Montgomery County Police responded to a call requesting assistance with an individual, Atterbeary, who was slumped behind the wheel of his car in front of an automobile dealership, with keys in the

ignition and the engine running. One of the responding officers noticed Atterbeary's slurred speech, bloodshot eyes, and a strong odor of alcohol emanating from his person. After Atterbeary failed several field sobriety tests, the officer took him to a police station.

At the police station, the officer read the DR–15 Advice of Rights Form to Atterbeary, and Atterbeary indicated that he was willing to take the breathalyzer test. When the officer asked Atterbeary to sign the consent provision on the DR–15 Form, however, Atterbeary stated that he did not understand the DR–15 Form and wanted to read the Form, a request that the officer obliged. Atterbeary informed the officer that he wanted to speak with an attorney but, thereafter, acknowledged that he did not have one at that moment. At that point, the officer asked "him again to sign [the form] and he refused to sign it, which to me he refused to take the breath test." *Id.* at 486, 796 A.2d at 79 (alteration in original). In response to Atterbeary's repeated requests for an attorney, the officer indicated on the form that Atterbeary refused the breathalyzer test, issued a citation to Atterbeary for driving while intoxicated, and released him.

Atterbeary requested an administrative hearing, in which he argued, *inter alia,* that he never refused to take the breathalyzer test. Atterbeary sought judicial review after the ALJ suspended his license, based, in part, on the determination that Atterbeary did, in fact, refuse to take the breathalyzer test. The circuit court judge reversed, finding that the invocation of the right to counsel could not be treated as a test refusal.

On certiorari, in affirming the circuit court, we limited our analysis to "whether [the officer's] conclusion that Atterbeary's unwillingness to sign the form and his repeated requests for an attorney constituted a refusal to submit to the test, [was] correct." *Id.* at 496–97, 796 A.2d at 85. In determining that Atterbeary's request to speak with an attorney could not be treated as a *per se* refusal of the breathalyzer test, we observed:

[T]he ALJ concluded that based on Atterbeary's repeated requests to speak with an attorney that he thereby refused to take the breathalyzer test. Logical reasoning simply cannot be strained in order to support such a leap, for when an individual chooses to exercise his or her right to contact counsel under *Sites*, the decision to do so is, at that point, neither necessarily a conditional nor a *per se* refusal to submit to the breathalyzer test.... [T]he DR–15 Form addresses many matters in addition to the consent to take the test. Atterbeary's request to speak to an attorney, without more, may not logically or exclusively be construed to relate only to the testing reference in the form advisement and, thus, be interpreted as an implied refusal of consent to be tested or a withdrawal of consent.

*Id.* at 499, 796 A.2d at 86–87. In reaching this conclusion, we recognized that, "[t]he exercise of the *Sites* right may be treated separately and distinctly from the assessment of whether an individual has refused to submit to a breathalyzer test." *Id.* at 499, 796 A.2d at 87. Based on the fact that Atterbeary had initially consented to take the breathalyzer test and that the exercising of one's *Sites* right to counsel may not be treated as a *per se* refusal, we determined that there was insufficient evidence to determine that Atterbeary refused to submit to the breathalyzer test.

Obviously, based upon our jurisprudence, it is incumbent upon an officer to afford a detained driver the opportunity to consult counsel prior to having to decide whether to take a chemical breath test. The spectre of the possibility of a criminal sanction to be imposed is omnipresent, and it would be impossible for an officer to determine whether potential test results could be limited only to administrative penalties. If a detained driver is not given the right to consult counsel, there may be implications in a criminal case, such as the suppression of test results; although, in the administrative context, similar remedies do not exist. *See MVA v. Richards*, 356 Md. 356, 366, 739 A.2d 58, 64 (1999).

In *Richards*, we addressed whether the exclusionary rule of the Fourth Amendment applies in an administrative license

suspension proceeding to bar introduction of evidence based on a purportedly unlawful motor vehicle stop. Addressing this issue, we first recognized that "the General Assembly made a deliberate effort in drafting § 16–205.1 to keep the criminal and administrative proceedings resulting from a suspected drunk-driving incident wholly separate," and that "subsection (f)(7) [12] [of Section 16–205.1 of the Transportation Article] makes paramountly clear that the constitutionality of the stop giving rise to the test request is not one of the issues to be presented at the hearing, nor is the possible exclusion of unconstitutionally seized evidence." *Id.* at 366–67, 739 A.2d at 64. *See also id.* at 367 n. 7, 739 A.2d at 64 n. 7 (noting that, "[i]n 1989, the MVA alerted the Task Force on Drunk and Drugged Drivers as to the purposeful non-inclusion of constitutional protections for Maryland drivers with respect to license suspension hearings under § 16–205.1, either in its

---

**12.** At the time, Section 16–205.1(f)(7) of the Transportation Article, Maryland Code (1977, 1999 Repl.Vol.), provided as follows:

(7)(i) At a hearing under this section, the person has the rights described in § 12–206 of this article, but at the hearing the only issues shall be:

1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while intoxicated, while under the influence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test is ineligible for modification of a suspension or issuance of a restrictive license under subsection (n)(1) and (2) of this section;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.10 or more at the time of testing; or

6. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle.

pre-amended form or under the proposed (and later adopted) amendment"). We further explained that the purpose of Section 16–205.1 of the Transportation Article was to protect the public rather than the accused:

> This Court has on several occasions addressed the purposes behind this State's legislation against "drunken driving." It is true that "[t]he General Assembly's goal in enacting the drunk driving laws . . . is 'to meet the considerable challenge created by this problem by enacting a series of measures to rid our highways of the drunk driver menace. These measures . . . are primarily designed to enhance the ability of prosecutors to deal effectively with the drunk driver problem.'" *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 464, 597 A.2d 939, 944 (1991) (quoting *Willis v. State*, 302 Md. 363, 369–70, 488 A.2d 171, 175 (1985)). Nevertheless, as we emphasized in *Shrader*, § 16–205.1 and related statutory provisions "were enacted for the protection of the public and not primarily for the protection of the accused." *Id.* at 464, 597 A.2d at 943 (citations omitted).

* * *

> "From the licensee's perspective, it is certainly true that suspension or revocation of a license may feel like 'punishment.' *A licensing system's ultimate goal, however, is to prevent unscrupulous or incompetent persons from engaging in the licensed activity.* To this end, revocation or suspension of a license clearly prevents a wrongdoer from further engaging in the licensed activity, at least temporarily."

*Id.* at 372–73, 739 A.2d at 67–68, quoting, in part, *State v. Jones*, 340 Md. 235, 252, 666 A.2d 128, 136 (1995). Holding that the "exclusionary rule of the Fourth Amendment should not be extended to [administrative license suspension proceedings]," we observed that the "the MVA is a separate and independent agency from the police department and has no control over the actions of police officers, [and that] imposing the exclusionary rule in license suspension proceedings would

add little force to the deterrence of unlawful police action."
*Id.* at 375–77, 739 A.2d at 69, 70.

Najafi, nevertheless, urges us to limit *Richards* such that
the denial of an individual's right to have a reasonable oppor-
tunity to consult with counsel, as articulated in *Sites,* may be
raised in the administrative context, as a result of an individu-
al's interest in his or her license, which he alleges has due
process implications. In *Brosan v. Cochran,* 307 Md. 662, 516
A.2d 970 (1986), we alluded to due process protections prior to
license suspensions:

> The continued possession of a driver's license may become
> essential to earning a livelihood; it is, therefore, an entitle-
> ment that may not be taken away without the due process
> mandated by the Fourteenth Amendment. *Sites* further
> makes clear that revocation of a driver's license may burden
> the ordinary driver as much or more than the traditional
> criminal sanctions of fine or imprisonment. By affording a
> drunk driver suspect the power to refuse chemical testing,
> the Maryland statute "deliberately gives the driver a choice
> between two different potential sanctions, each affecting
> vitally important interests." Thus, drunk driving suspects
> have a significant interest at stake in deciding whether to
> submit to the State-administered chemical sobriety test. If
> they refuse, their licenses are suspended, and they may also
> be convicted based on other evidence of drunk driving. For
> drunk driving suspects who would "pass" the State's test,
> therefore, the pre-election administration of a private
> breathalyzer would likely encourage them to submit to the
> test and thereby avoid the automatic license suspension and
> possibly criminal prosecution as well.

*Id.* at 672, 516 A.2d at 975–76 (citations omitted). The due
process protection prior to license suspension acknowledged in
*Brosan,* however, is satisfied by the procedural due process
afforded by Section 16–205.1 of the Transportation Article, as
we most recently addressed in *Hill v. MVA,* 415 Md. 231, 999
A.2d 1019 (2010).

In that case, Hill challenged the content and structure of the DR–15 Form and alleged that his due process rights had been impugned. In addressing this issue, we observed that an individual facing the possible suspension of his or her license, indeed, has a "significant interest at stake in deciding whether to submit to [a] State-administered chemical sobriety test." *Id.* at 242, 999 A.2d at 1025, quoting *Brosan,* 307 Md. at 672, 516 A.2d at 975. We noted, however, that this "interest is balanced against the State's compelling interest in protecting its citizens from drunk drivers, including an interest in encouraging suspects to submit to alcohol concentration tests so as to improve administrative efficiency." *Id.,* quoting *Hare v. MVA,* 326 Md. 296, 303, 604 A.2d 914, 917 (1992), *superseded by statute on other grounds,* 1993 Maryland Laws, Chapter 407. In the administrative context, we recognized that "[a] detaining officer's compliance with the protections of due process requires that an officer advise a driver of the applicable sanctions under the governing statute." *Id.* at 243, 999 A.2d at 1025 (citation omitted). This "require[s] only that the State 'not mislead the defendant or construct [metaphorical or semantic] road blocks, thus unduly burdening' the driver's decision making process when considering whether to submit to the State's test." *Id.* at 243–44, 999 A.2d at 1026, quoting *Hare,* 326 Md. at 304, 604 A.2d at 918 (alteration in original). A determination of whether Hill's due process rights were impinged rested solely, then, on whether the DR–15 Form "correctly advised Hill of the proper sanctions applicable under the statute without being misleading." *Id.* at 244, 999 A.2d at 1026, which, as we held, it did.

■ Prior to *Hill,* we certainly also had occasion to determine that the implied consent statute provides sufficient due process for a detained driver. *See MVA v. Lytle,* 374 Md. 37, 71, 821 A.2d 62, 82 (2003) (in finding that driver was afforded sufficient due process, noting that driver's "suggested additional procedure [of requiring that margin of error be factored into the calculation of a tested person's BAC] would result in a burden on the State disproportionate to the benefits to the individual"); *Forman v. MVA,* 332 Md. 201, 214, 630 A.2d 753,

760 (1993) (observing that "due process does not require a detaining officer to provide any advice other than that which the statute requires")[13]; *MVA v. Chamberlain*, 326 Md. 306, 323 & n. 11, 604 A.2d 919, 927 & n. 11 (1992) (holding that, where the driver was properly advised of the "sanctions that shall be imposed," the police officer fully comported with the requirements of due process), *superseded by statute on other grounds*, 1993 Maryland Laws, Chapter 407. Similarly, in the present case, the requirements of due process were met when Najafi was properly advised of the possible administrative sanctions when, as ALJ Chapman found, he was afforded the opportunity to read the DR–15 Form twice.

Ultimately, however, our discussion in the instant case as to the effect, in the administrative context, of the applicability of a right to consult counsel prior to making a test election is really dicta, because Najafi clearly was given an opportunity to contact counsel. As the ALJ determined, the officer gave Najafi a reasonable opportunity to contact an attorney telephonically. Najafi's allegation that he was denied·a right to privacy during his attempted consultation with counsel, moreover, is somewhat facetious because he did not engage in a dialogue for which privacy may have been necessary as a result of the aborted telephone call.

 Najafi also argues that the ALJ erred in determining that Najafi refused to take a breathalyzer test, essentially that

---

13. Najafi cites *Forman v. MVA*, 332 Md. 201, 630 A.2d 753 (1993), for the proposition that it "inferentially supports [his] position," because *Forman* "implied that the *Sites* right could be an issue at an MVA hearing with respect to the MVA's burden to prove that a refusal was both 'knowing and voluntary.'" Najafi contends that *Forman* stands for the proposition that an officer's treatment of an individual's invocation of his or her *Sites* right to counsel is a consideration for the ALJ when "decid[ing] whether the officer[ ] 'prevented a detained driver from making a knowing and voluntary decision to refuse the test.'" (citation omitted). In *Forman*, however, we were clear that the "ALJ has the obligation of determining at the hearing whether the detaining officer has misstated the consequences of refusal, or whether the officer has clearly made the refusal option more attractive." *Forman*, 332 Md. at 219, 630 A.2d at 763. The ALJ in the present case satisfied this obligation.

there was not substantial evidence in the record to support the ALJ's finding. Najafi alleges that he did not refuse because the officer failed to ask him to make an election, after Najafi unsuccessfully attempted to contact his attorney. The MVA argues, conversely, that Najafi was properly advised of his rights through the DR–15 form and that the officer had asked him to make an election. Accordingly, MVA contends, Najafi's failure to make an election, after his unsuccessful attempt to contact his attorney, constituted a refusal.

With regard to the proof regarding the refusal, the ALJ found persuasive the DR–15 and DR–15A Forms, which included, *inter alia,* the officer's certification that he advised Najafi of the possible administrative sanctions as stated in the Advice of Rights and that Najafi refused to take the breathalyzer test. Based on this evidence, the ALJ determined that Najafi refused to take the breathalyzer test.

In *MVA v. Karwacki,* 340 Md. 271, 273, 666 A.2d 511, 512 (1995), we addressed whether an ALJ "may give greater credit to the sworn written statement of an absent police officer, who was not subpoenaed by either party, than to the conflicting testimony of the motorist." In *Karwacki,* during the administrative hearing, Karwacki testified that the officer requested that he take a chemical breath test and also advised him that he could refuse the test. Karwacki testified, however, that he had no recollection of the officer advising him of the consequences of a failure of the alcohol test or of the consequences of a second refusal of an alcohol test.[14] Karwacki also testified that he did not read either of the forms he signed and he did not believe that the officer had read them to him. In suspending Karwacki's license for one year, the ALJ found the certification of the officer to be more credible than Karwacki's testimony.

In our analysis, we described the contents of the DR–15 and DR–15A forms certified by the officer:

---

14. Karwacki had previously refused to take an alcohol test, for which his license had been suspended.

The certification and order of suspension contained the officer's sworn statement of the reasons the respondent was stopped and detained. In it, the officer also certified that "after being fully advised of sanctions that shall be imposed as provided in the advice of rights form DR–15, [the respondent] refused to take a test to determine alcohol concentration by this officer." The advice of rights form, to which the officer's certification referred, contains a detailed summary of the provisions of the implied consent statute. It was signed by both the police officer and the respondent. More importantly, the respondent's signature acknowledged that he read or had read to him the information in the advice of rights form, that he had been advised of the administrative sanctions that "shall be imposed" for a test refusal or a test failure, and that he refused the test.

*Id.* at 282, 666 A.2d at 516. We recognized that, under Section 16–205.1(f)(7)(ii) of the Transportation Article, the sworn statement of the arresting officer is prima facie evidence of a test refusal.[15] We further noted that "the advice of rights form 'accurately and adequately conveys to the driver the rights granted by the [implied consent] statute.'" *Id.*, quoting *Forman v. MVA*, 332 Md. 201, 218, 630 A.2d 753, 762 (1993). As a result, we determined that, "[b]eing prima facie evidence of a test refusal, the sworn statement of the officer, unless explained or contradicted, was sufficient to establish that the respondent refused to take an alcohol concentration test." *Id.* at 283, 666 A.2d at 516. In finding that the "officer's sworn statement provide[d] adequate support for the ALJ's conclusion," we noted that "credibility findings of the agency representative who sees and hears witnesses are entitled to great deference on further agency review and should not be reversed absent an adequate explanation of the grounds for the reviewing body's disagreement with those findings." *Id.* at 284–85, 666 A.2d at 517–18. In so holding, we observed:

---

15. In the present case, at the time of Najafi's refusal, the iteration of Section 16–205.1(f)(7)(ii) of the Transportation Article provided: "The sworn statement of the police officer ... shall be prima facie evidence of a test refusal...."

The respondent's testimony was intended to rebut and contradict the officer's sworn statement as to the advice he gave the respondent. Indeed, had the ALJ found the respondent's testimony reliable, *i.e.* he believed the respondent's testimony, then the sufficiency of the evidence as to the adequacy of the advice that the officer gave the respondent would have been undermined and the sworn statement no longer would have been sufficient to establish the fact that the respondent refused the test. The ALJ did not find the respondent's testimony to be reliable, however. Instead, he considered that the documentary evidence was more persuasive.

Undoubtedly, it is that reference to the credibility of the documentary evidence that prompted the issue this case presents. The only issue before the ALJ involving a credibility determination was the evaluation of the respondent's testimony to determine whether it successfully and adequately rebutted or contradicted the *prima facie* evidence that the respondent refused the test, which already was in the case. Because the ALJ determined the documentary evidence was more credible than the respondent's testimony, it is absolutely clear that the ALJ did not find the respondent's testimony to be sufficient to negate the fact the officer's sworn statement established. Having concluded that the respondent's testimony did not rebut the officer's sworn statement that the respondent refused the test after having been fully advised, the ALJ set forth the basis for those conclusions, as he was required to do.

*Id.* at 284–85, 666 A.2d at 517.

In the present case, the ALJ specifically cited *Karwacki* when making her finding that the officer's certification that Najafi refused to take the breathalyzer test was more credible than Najafi's testimony. She further noted that Najafi had read the Advice of Rights Form twice and concluded that, "based on [Najafi's] testimony and based on the documents before [her] ... an election was not made and ... it was reasonable for the officer to make the inference that [Najafi] refused to take the breathalyzer at that time." Like the ALJ

in *Karwacki*, ALJ Chapman was entitled to find that Najafi's testimony "did not rebut the officer's sworn statement that [he] refused the test." *Id.* at 285, 666 A.2d at 517. Accordingly, the ALJ's finding that Najafi refused the breathalyzer test was supported by substantial evidence.

To conclude, we avoid having to determine whether or not a police officer must afford the right to counsel to a detained driver in the administrative license suspension hearing, because the detaining officer afforded Najafi a reasonable opportunity to consult counsel, and there was substantial evidence to support ALJ Chapman's finding that Najafi refused to take the breathalyzer test. We, therefore, affirm the judgment of the Circuit Court for Montgomery County.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

HARRELL, J., concurs.

HARRELL, J., concurring.

The Majority opinion could, and should, have been quite a bit shorter, by its own admission. Twenty-three pages into the opinion there appears a paragraph beginning with this sentence: "Ultimately, however, our discussion in the instant case as to the effect, in the administrative context, of the applicability of a right to counsel prior to making a test election *is really dicta*, because Najafi *clearly* was given an opportunity to contact counsel." (Emphasis added.) Moreover, in the last paragraph of the Majority opinion (op. at 188, 12 A.3d at 1270), it is stated that "we avoid having to determine whether or not a police officer must afford the right to counsel to a detained driver in the administrative license suspension hearing...." I construe these statements as conceding that: (1) the considerable discussion devoted to Petitioner's first question on certiorari is unnecessary to decide this case; and, (2) the first question is a moot one, on this record. I join the judgment and the remaining analysis of the Majority opinion supporting affirmance.