*Motor Vehicle Administration v. April Marie Deering*
No. 52, September Term 2013


**Maryland Vehicle Law - Drivers' Licenses - Administrative Remedies - Implied Consent, Administrative Per Se Law.** A driver who is stopped by a police officer on suspicion of drunk driving, who is asked to take a breath test under the "implied consent, administrative per se law," and whose license is administratively suspended under that law as a result of an adverse test result or a refusal to take the test, is not entitled to have the suspension set aside on the ground that the driver was not permitted to consult counsel when deciding whether to take the test.

Circuit Court for Somerset County
Case No. 19-C-015606
Argued: January 9, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 52

September Term, 2013

_____

MOTOR VEHICLE ADMINISTRATION

v.

APRIL MARIE DEERING

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: May 21, 2014

In the effort to reduce the hazards caused by drunk drivers, the General Assembly, like the legislatures of most other states, has enacted as part of the Maryland Vehicle Law a statute known as "the implied consent, administrative per se law." That statute incorporates "implied consent" in that it provides that any individual who drives a vehicle in Maryland is deemed to have consented to take a chemical test – usually, a breath test – to measure blood alcohol concentration, if stopped by a police officer with reasonable grounds to believe that the person has been driving under the influence of alcohol. Despite the statute's declaration of implied consent by all drivers, it recognizes that a driver detained by an officer may refuse to take the breath test. But the time for making that decision is limited – blood alcohol concentration is transient and any test must be conducted within two hours of the stop.

The phrase "administrative per se" refers to the administrative consequences of a refusal to take the breath test, or of test results that reveal that the driver has a blood alcohol concentration above certain levels (regardless of whether the driver otherwise appears to be impaired). In both cases, the law provides for an automatic suspension of the driver's license for specified periods. The license suspension is an administrative sanction that is distinct from any criminal prosecution of the driver that might also ensue.

Under the "implied consent, administrative per se law," a detained driver thus has a choice to make – a choice with legal consequences. On the one hand, refusing the test carries a sure suspension; on the other, taking the test may result in no sanction at all or in a significant suspension plus an increased potential for criminal prosecution, depending on the test result.

Does a detained driver have a right to consult with legal counsel before making this choice? What are the consequences if the police officer declines to allow the detained driver to contact counsel? How does the significant time constraint for taking the test affect this calculus? And, if there is a right to a pre-test consultation with counsel, must the State furnish counsel for indigent drivers, or is such a right only for the well-to-do?

This Court has previously held, in the context of a criminal prosecution, that a driver detained on suspicion of drunk driving who requests an opportunity to consult with counsel before deciding whether to take the test has a due process right to be allowed a reasonable opportunity to do so if, in the view of the officer, it would not interfere with a timely administration of the test. In that case, the Court suggested that violation of that right would result in exclusion of any adverse test result from evidence in a criminal prosecution. In a subsequent case, the Court considered the effect of an alleged constitutional violation in the apprehension of a suspected drunk driver who refused a breath test; it held that a violation that might result in the exclusion of evidence from a criminal trial would not affect the *administrative* suspension of the driver's license. More recently, this Court has indicated, in a passage not necessary to the decision of the case before it (*i.e.,* dicta), that the failure to allow a pre-test opportunity to consult with counsel would also not relieve the driver of an administrative license suspension. To decide this case, we must decide whether to adhere to that view.

For the reasons set forth below, we confirm the view previously expressed in dicta. Even if a suspected drunk driver is denied the opportunity to consult counsel before deciding

whether to take the breath test and might have a test refusal or a test result excluded from evidence in a criminal case, the driver may not avoid the automatic administrative license suspension that the statute assigns to the test refusal or test result.

## Background

### *The Implied Consent, Administrative Per Se Law*

Motivated in part by incentives created by federal law, nearly every state has enacted some form of an implied consent, administrative per se law as part of its strategy to combat drunk driving.[1]  Such a law supplements the criminal penalties for drunk driving with an administrative remedy – a remedy that can remove an impaired driver from the highways for a certain period of time without need to pursue a criminal prosecution, as well as encourage drivers to cooperate in a test that measures potential impairment due to alcohol consumption. *See* Report of Task Force on Drunk and Drugged Driving to Maryland General Assembly (1988 Interim) at pp. 8, 11.

---

[1] *See* National Highway Traffic Safety Administration ("NHTSA"), Blood Alcohol Concentration Test Refusal Laws, DOT HS810 884W (January 2008) (reporting that all states had some form of an implied consent statute relating to chemical tests for blood alcohol concentration); NHTSA, Administrative License Revocation, DOT HS810878 (January 2008) (reporting that 41 states and the District of Columbia had enacted laws that provided for an immediate license suspension or revocation based on a test refusal or an adverse test result).  *See also* 23 U.S.C. §163 (providing for federal grants to states that have enacted a law that any person who operates a motor vehicle with a blood alcohol concentration in excess of .08 has committed a per se offense);  NHTSA Recommendations from the Secretary of Transportation: Federal Legislative Programs Designed to Encourage Enactment of State Impaired Driving Laws (August 1998), *available at* http://www.nhtsa.gov/people/injury/ alcohol/Archive/Archive/Limit.08/PresInit/federal.html.

The Maryland version appears in the Maryland Vehicle Law, which comprises titles 11 through 27 of the Transportation Article ("TR") of the Maryland Code. TR §11-206. The implied consent, administrative per se law is codified in TR §16-205.1. As to implied consent, it states, in pertinent part:

> Any person who drives or attempts to drive a motor vehicle ... in this State is deemed to have consented … to take a [breath] test [to determine blood alcohol concentration] if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol....

TR §16-205.1(a)(2).[2] Although the statute deems all drivers in Maryland to have consented to take a breath test, it nonetheless allows a driver detained under suspicion of drunk driving to elect at that time whether to take the test. TR §16-205.1(b). If the driver chooses to take the test, the officer must ensure that the test is administered within two hours of the time the driver was stopped. *See* Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §10-303(a).

Thus, while consent is implied, it may be withdrawn – for a price. Under the statute, a refusal to take the test results in an administrative license suspension of 120 days for a first offense, and in a suspension of one year for a second or subsequent offense. TR §16-205.1(b)(1)(i)3.[3] The alternative is to take the test and risk a result that may carry lesser

_____

[2] The statute also provides for the use of a blood test, although that use is limited to certain circumstances. *See* TR §16-205.1(a)(1)(iii); Maryland Code, Courts and Judicial Proceedings Article, §10-305(a).

[3] The statute provides:

(continued...)

4

periods of administrative suspension – or perhaps no suspension at all – although an adverse

result may also be used in a criminal prosecution. A test result showing a blood alcohol

concentration above .08[4] results in an administrative suspension of between 45 days and 180

days, depending on the level of alcohol concentration and whether it is a first or subsequent

offense. TR §16-205.1(b)(i)1-2.[5] In some circumstances, a suspension may be modified in

---

[3] (...continued)
> 3. For a test refusal:
>
>> A. For a first offense, suspend the driver's license for 120 days; or
>>
>> B. For a second or subsequent offense, suspend the driver's license for 1 year.

TR §16-205.1(b)(1)(i)3. The statute provides similar periods for the suspension of driving privileges in Maryland for nonresidents and other drivers who do not hold a Maryland driver's license. TR §16-205.1(b)(1)(ii)3.

[4] Alcohol concentration is measured in the number of grams of alcohol per 100 milliliters of blood or the number of grams of alcohol per 210 liters of breath. TR §11-103.2(a).

[5] The statute provides that the Motor Vehicle Administration shall:

> (i) In the case of a person licensed under this title:
>
>> 1. Except as provided in item 2 of this item, for a test result indicating an alcohol concentration of 0.08 or more, at the time of testing:
>>
>>> A. For a first offense, suspend the driver's license for 45 days; or
>>>
>>> B. For a second or subsequent offense, suspend the driver's license for 90 days;

(continued...)

5

favor of a restricted license that allows the individual to drive for employment, education, or similar purposes. TR §16-205.1(n), (o). The automatic suspension for a test refusal is designed to encourage drivers to take the breath test, with the result that impaired drivers can be accurately detected and the safety of the roadways enhanced.

The statute requires the arresting officer to advise the detainee of the possible administrative sanctions for a refusal to take the breath test and for test results that show blood alcohol concentration above certain levels. TR §16-205.1(b)(2). Typically, the officer satisfies this requirement by reading, and providing the driver with, a form created by the Motor Vehicle Administration ("MVA") for that purpose, known as the "DR-15" form. That form sets forth a detained driver's options under the implied consent statute, the consequences of failing to take the breath test and of test results that indicate certain levels

---

[5] (...continued)

> 2. For a test result indicating an alcohol concentration of 0.15 or more at the time of testing:
>
> A. For a first offense, suspend the driver's license for 90 days; or
>
> B. For a second or subsequent offense, suspend the driver's license for 180 days; ...

TR §16-205.1(b)(1)(i)1-2. The statute provides similar periods for the suspension of driving privileges in Maryland for nonresidents and other drivers who do not hold a Maryland driver's license. TR §16-205.1(b)(1)(ii)1-2. The statute also provides for longer periods of suspension for a test refusal by a driver who holds a commercial driver's license. TR §16-205.1(b)(iii). A 2014 amendment, to become effective October 1, 2014, added provisions related to the suspension of a commercial instructional permit. Chapter 5, Laws of Maryland 2014.

of blood alcohol concentration, and other rights and consequences, including the right to an administrative hearing. *See Motor Vehicle Administration v. Delawter*, 403 Md. 243, 262-67, 941 A.2d 1067 (2008).

If the driver refuses to take the test or fails the test, the officer is to serve an order of suspension on the person, seize the person's license, and issue a temporary license that may be used for a maximum of 45 days or until the individual's license is formally suspended after a license suspension hearing. TR §16-205.1(b)(3). The statute permits the driver to request a hearing before an officer of the MVA. TR §16-205.1(f). Under a delegation from the MVA, the hearing is conducted by an administrative law judge ("ALJ") of the Office of Administrative Hearings. TR §12-104(e); COMAR 11.11.02.07. The statute enumerates specific issues that can be raised at the license suspension hearing: whether the officer had reasonable grounds for believing that the driver was impaired, whether there was evidence of drug or alcohol use by the driver, whether the officer properly advised the driver in accordance with the statute when requesting the breath test, whether the driver refused the test, and related issues. TR §16-205.1(f)(7)[6]; *see Motor Vehicle Administration v. Jones*,

---

[6] At the time of Ms. Deering's hearing, TR §16-205.1(f)(7)(i) provided:

(7)(i) At a hearing under this section, the person has the rights described in §12-206 of this article, but at the hearing the only issues shall be:

1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any

(continued...)

7

380 Md. 164, 844 A.2d 388 (2004) (ALJ may not consider whether a test was performed within two hours of detention as it is not among the hearing issues enumerated in TR §16-205.1(f)(7)(i)). Whether the driver had an opportunity to consult counsel before deciding whether to take the breath test is not among those issues. If a suspension is imposed as a

--------

[6] (...continued)
drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of §16-813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised, as required under subsection (b)(2) of this section, of the administrative sanctions that shall be imposed;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of .08 or more at the time of testing;

6. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.15 or more at the time of testing;

7. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle or held a commercial driver's license.

result of the hearing, the driver may seek judicial review in the circuit court. TR §16-205.1(j); TR §12-209.

The statute provides that the determination of any facts by the MVA "is independent of the determination of the same or similar facts in the adjudication of any criminal charges." TR §16-205.1(*l*). Moreover, a criminal conviction arising out of the same occurrence may result in additional administrative sanctions. TR §16-205.1(k).

## A Traffic Stop and its Aftermath

### The Stop and Test of Ms. Deering

Shortly after midnight on May 3, 2012, an officer of the Fruitland Police Department in Wicomico County stopped Respondent April Marie Deering for driving her car without dimming the high beams and with an expired registration tag. After noticing that Ms. Deering smelled strongly of alcohol and that her speech was slurred, the officer asked Ms. Deering to perform a number of field sobriety tests, which she failed to complete satisfactorily. The officer arrested Ms. Deering for driving under the influence of alcohol and transported her to the Fruitland police station.

At the police station, the officer read to Ms. Deering the DR-15 form which, as noted above, advised her of her options under the implied consent, administrative per se law and the consequences of declining to take the test and of test results that revealed certain levels of intoxication. The Fruitland police station does not have the equipment to administer a

9

breath test.[7]  If a detained driver opts to take a breath test, the arresting officer drives the individual to a State Police barracks for that purpose, approximately 20 minutes away from the Fruitland police station.  Because of the limited time for taking the test, the Fruitland police typically do not accede to a detained driver's request to contact an attorney until after processing and any test is completed.

According to Ms. Deering, she asked the officer if she could call an attorney, but was not allowed to make a call.  (Ms. Deering testified that she had a personal relationship with an attorney whose number she kept in her cell phone, although it is not clear that she communicated that fact to the officer at the time of her detention).  The officer testified that he did not specifically recall a request by Ms. Deering, but that typically he would not allow a detained driver to try to contact an attorney before a test because of the limited two-hour time frame for administering the test.

Ms. Deering agreed to take a breath test at 12:50 a.m., approximately 45 minutes after the initial traffic stop.  The officer then transported her to the State Police barracks, where the test was administered.  Ms. Deering's first attempt to take the test failed, and she completed the test for a second time at 1:56 a.m., nearly an hour and 50 minutes after the initial stop and one and a half hours after her arrest.  The test result indicated that she had a blood alcohol concentration of 0.16.  In accordance with the implied consent, administrative per se law, the officer issued an order of suspension for 90 days to Ms. Deering, the

---

[7] The instrument is called an Intoximeter.

10

prescribed suspension for a blood-alcohol concentration of 0.15 or more.[8]  Had Ms. Deering

refused to take the breath test, the officer would have issued an order of suspension of Ms.

Deering's driver's license for 120 days – the prescribed suspension for a refusal to take the

test.[9]

*The ALJ's Decision*

As permitted by the statute, Ms. Deering asked for an administrative review of the

suspension order.  At her administrative hearing on June 29, 2012, Ms. Deering argued that

she had a right during her detention to consult counsel before she decided whether to take the

breath test and that the failure to allow her to call an attorney violated due process.  She

asked that, in recognition of the alleged due process violation, the ALJ take "no action" – that

is, not impose a suspension based on the result of the breath test.

At the hearing, the ALJ opined that the denial of Ms. Deering's request to consult an

attorney before deciding to take the breath test was a "matter of timing" – apparently alluding

to the need to transport Ms. Deering to the State Police barracks and conduct the test within

two hours – and did not violate Ms. Deering's right to due process.  In a written decision

dated July 30, 2012, the ALJ concluded that Ms. Deering had violated TR §16-205.1 and, in

accordance with the statute, upheld the suspension of Ms. Deering's driver's license for 90

days.  The ALJ explained the decision by completing a pre-printed form designed for that

purpose.  Under a section of the form entitled "other facts," the ALJ wrote, "Officer fully

---

[8] TR §16-205.1(b)(1)(i)2.A.

[9] TR §16-205.1(b)(1)(i)3.A.

11

advised Licensee of potential sanctions; although not given opportunity to call lawyer, not necessary in admin[istrative] context." Ms. Deering sought judicial review of the ALJ's ruling in the Circuit Court for Somerset County.[10] On August 1, 2012, Ms. Deering filed a motion for a stay of her suspension pending appeal but withdrew that motion when the MVA administratively granted her request for a stay.

*The Circuit Court's Ruling*

The Circuit Court heard argument and, on March 22, 2013, reversed the ALJ's decision. It held that, under *Sites v. State*, 300 Md. 702, 481 A.2d 192 (1984), the denial of Ms. Deering's request to contact her attorney violated her right to due process under the Fourteenth Amendment. The Circuit Court explained that, despite the fact that *Sites* was a criminal case, its holding was applicable to Ms. Deering's administrative proceeding. The Circuit Court concluded that Ms. Deering was not afforded a reasonable opportunity to contact an attorney "because the Fruitland Police Department routinely denies such requests." As to whether Ms. Deering was actually prejudiced in the administrative proceeding by her inability to consult counsel in deciding whether to take the test – she received a shorter suspension than she would have received if she had elected to refuse the test – the Circuit Court stated that it is not "this Court's function to determine what ... prejudice resulted from the denial of that right."

---

[10] Although Ms. Deering was detained in Wicomico County, venue was proper in Somerset County because Ms. Deering resided in Princess Anne. TR §12-209(a)(2).

The MVA subsequently filed a petition for writ of certiorari in this Court, which we granted to consider whether the ALJ properly upheld the suspension of Ms. Deering's license despite the fact that the detaining officer had denied her request to speak to an attorney before she decided whether to take the breath test.

**Discussion**

*Standard of Review*

When, as here, we review the decision of an administrative agency, we apply the same standard of review as the Circuit Court and directly evaluate the decision of the agency. *Motor Vehicle Administration v. Shea*, 415 Md. 1, 15, 997 A.2d 768 (2010). A reviewing court "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." 415 Md. at 14. While this standard accords less deference to an agency's legal conclusions than to its fact findings, a reviewing court should give weight to the administrative agency's interpretation and application of the statute that the agency administers. *Id.* at 14-15.

In this case, the essential facts are undisputed. The question before us is one of law – whether the ALJ was correct in concluding that the fact that the officer did not allow Ms. Deering to contact an attorney when she was deciding whether to take the breath test did not affect the administrative suspension of her license pursuant to TR §16-205.1.

***Whether Denial of a Pre-Test Consultation with Counsel Precludes a Suspension***

*Due Process in an Administrative Context*

In the context of administrative proceedings, courts apply a balancing test to assess whether the procedures employed comport with the due process required by the federal Constitution. In particular, courts look to the private interest at stake, the governmental interest, and the risk that the procedures used will lead to erroneous decisions. *Mathews v. Eldridge,* 424 U.S. 319, 334-35 (1976). This is not a mechanical exercise. As the Supreme Court has observed: "[Due process] expresses the requirement of 'fundamental fairness,' a requirement whose meaning can be as opaque as its importance is lofty. Applying the Due Process Clause is therefore an uncertain enterprise which must discover what 'fundamental fairness' consists of in a particular situation ...." *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 24-25 (1981). It requires an assessment of the interests at stake and any relevant precedents. *Id.*

A driver's interest in the continued right to drive in Maryland is certainly an important one that can affect the individual's ability to work and otherwise function in society. That interest must be weighed against the public interest to deter drunk driving and to protect the public, not to mention the impaired driver, from the consequences, often fatal, of impaired driving. The implied consent, administrative per se law was designed to serve that interest

14

by putting in place an effective administrative mechanism to remove impaired drivers from the roadways and to encourage all drivers to cooperate in a test to measure impairment.[11]

The risk that a driver may incur an erroneous administrative sanction due to the inability to consult with counsel before taking the test is minimal or non-existent. In the administrative context, the statute prescribes specific periods of suspension based on either the driver's refusal to take the breath test or an adverse test result. Advice of counsel before the test may aid the driver in deciding whether to take the sure suspension related to a refusal or risk a different suspension by taking the test, but it would not affect whether the basis for the sanction was erroneous.[12]

If the question of a right to a pre-test consultation with counsel arose in a purely administrative context, we would likely conclude that due process does not require such a

---

[11] When the General Assembly amended the "implied consent, administrative per se law" to extend administrative sanctions to adverse test results, as well as refusals to take the breath test, the speed and certainty of the administrative remedy were key factors favoring that remedy. Chapter 284, Laws of Maryland 1989. *See* Floor Report for House Bill 556 (1989), Senate Judicial Proceedings Committee ("The administrative per se standard provides a swift penalty which is separate from any criminal penalties that may be imposed for the driving offenses."); Bill Analysis for House Bill 556 (1989), Senate Judicial Proceedings Committee ("This bill would assure immediate and certain sanctions by the Administration. Speedy administrative sanctions would help the offender to recognize the cause and effect relationship between the offense and the sanction which would otherwise be weakened by lengthy delays in the court processes.").

[12] There may be instances where a driver refuses to take a breath test despite not having consumed any alcohol or not having consumed the quantity of alcohol required to have a breath test result of .08 or more. Even in those circumstances, however, the State has a legitimate interest in sanctioning a driver who refuses to take a breath test given that the efficacy of the implied consent, administrative per se law in curbing drunk driving depends largely on the willingness of drivers to take the test.

15

consultation. However, a detained driver also faces the prospect of potential criminal penalties, including incarceration – a circumstance that may weigh in favor of greater protection for the detained driver. In any event, there may be different consequences for criminal and administrative proceedings that arise from the same events. No prior decision of this Court directly controls the outcome of the question posed by this case. The most pertinent decisions are discussed below.

*Sites*

This Court first addressed a suspected drunk driver's right to consult counsel prior to deciding whether to take a breath test in *Sites v. State,* 300 Md. 702, 481 A.2d 192 (1984), a criminal case. Sites was detained on suspicion of drunk driving, and repeatedly and unsuccessfully requested permission to speak to his attorney before deciding whether to take the breath test. He ultimately took the test without consulting counsel, and the result showed a blood alcohol concentration level of 0.17. He was criminally charged with driving while intoxicated.[13]

Sites filed a pretrial motion to suppress the test result on the ground that he was denied his right to counsel prior to deciding whether to take the breath test. The circuit court denied the motion, stating that he had no such right to consult counsel. This Court granted certiorari to consider the question of whether the results of a breath test should be suppressed in a

---

[13] At the time of the *Sites* decision, TR §16-205.1 provided for an automatic administrative sanction only for a refusal to take the test. In 1989, the statute was amended to include administrative sanctions for failing the test, independent of any criminal prosecution. Chapter 284, Laws of Maryland 1989.

criminal trial on the ground that the defendant was denied an opportunity to consult an attorney before deciding whether to take the test.  300 Md. at 708-9.

The Court rejected Sites' claim that he had a right to consult counsel under TR §16-205.1 or the Sixth Amendment of the federal Constitution.  300 Md. at 710-12.[14]  But it held that Sites had a due process right under the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights to communicate with counsel before deciding whether to submit to the breath test.  *Id.* at 717-18.  The Court reasoned that "[t]he continued possession of a driver's license…may become essential to earning a livelihood," and concluded that "[possession of a driver's license] is an entitlement which cannot be taken without the due process mandated by the Fourteenth Amendment."  *Id*. at 717 (citation omitted).  It concluded that "a person under detention for drunk driving must, on request, be permitted a reasonable opportunity to communicate with counsel before submitting to a chemical sobriety test, as long as such attempted communication will not substantially interfere with the timely and efficacious administration of the testing process."  *Id*. at 717-18.[15]

---

[14] The Court in *Sites* found that all the statutory requirements for administering the test – which did not include a pre-test consultation with counsel – had been satisfied.  With respect to the Sixth Amendment argument, the Court noted that a "formal [criminal] charge is the legal event that marks the starting point of the right to counsel under the Sixth Amendment," and that Sites had not been charged until after the test had been administered. In a subsequent decision, the Court held that a detained driver does not have a Fifth Amendment right to counsel in connection with the decision whether to take a breath test, as the evidence to be taken is not testimonial.  *McAvoy v. State*, 314 Md. 509, 517-20, 551 A.2d 875 (1989).

[15]  The right recognized in *Sites* was later extended in *Brosan v. Cochran*, 307 Md. 662, 669-74, 516 A.2d 970 (1986), to include a driver's right to face-to-face consultation

(continued...)

The Court noted that the test has to be administered promptly because "the statutory purpose [is] to obtain the best evidence of blood alcohol content as may be practicable in the circumstances, and it is common knowledge that such content dissipates rapidly with the passage of time." 300 Md. at 718. Accordingly, the right to consult counsel will be limited by the exigencies of a particular case. *Id.* Moreover, the Court stated that "great deference" should be accorded to the determination by an officer that a consultation with counsel would interfere with timely administration of the test. *Id.*; *see also Forman v. Motor Vehicle Administration*, 332 Md. 201, 217 n.7, 630 A.2d 753 (1993) (stating that there is a "limited due process right" under *Sites* for a suspected drunk driver to contact counsel).

In the case before it, the *Sites* Court declined to hold that the test result should be suppressed, stating that "there is nothing in the record to show whether, in the circumstances, the refusal of the police to permit a phone call (if in fact that occurred) constituted a violation of Sites' due process right." *Id.* at 718-19.

*The Due Process Rationale of Sites*

As outlined above, the *Sites* Court based its holding on the due process clauses of the federal and State constitutions. The Court cited, without significant analysis, several Supreme Court decisions on the due process clause, most of which did not concern a right to counsel, as well as *Rutherford v. Rutherford*, 296 Md. 347, 464 A.2d 228 (1983), in which

---

[15] (...continued) with an attorney and the attorney's right to administer the attorney's own breath test to the client.

this Court held that an indigent defendant who faces incarceration in a civil contempt proceeding has a right to government-furnished counsel.

The *Sites* Court acknowledged that there was scant authority on the precise issue before it and that other state supreme courts had reached the opposite conclusion. 300 Md. at 716-17. It discussed three cases from other jurisdictions that arguably concluded that the due process clause of the Fourteenth Amendment required a reasonable pre-test opportunity to consult with counsel, although the Court appeared to acknowledge that those cases were a weak foundation for its holding: *People v. Gursey*, 239 N.E.2d 351 (N.Y. 1968), *State v. Newton*, 636 P.2d 393 (Or. 1981)*,* and *Troy v. Curry*, 303 N.E.2d 925 (Ohio Mun. 1973).

For example, in *Gursey*, the New York Court of Appeals simply stated that "the denial of defendant's requests for an opportunity to telephone his lawyer must be deemed to have violated his privilege of access to counsel," but, as the *Sites* Court noted,[16] the New York court did not specify whether that privilege arose from a state rule, a statute, the state constitution, or the federal Constitution.[17]

In *Newton,* a plurality of the Supreme Court of Oregon did explicitly conclude that the due process clause of the Fourteenth Amendment to the federal Constitution requires that a suspected drunk driver have an opportunity to consult counsel prior to deciding whether

_____

[16] 300 Md. at 717.

[17] *Gursey* was an appeal of a criminal prosecution. While the court cited *Escobedo v. Illinois*, 378 U.S. 478 (1964) – a Sixth Amendment case – and one of its own prior decisions based on *Escobedo*, it did not explicitly state the precise constitutional basis for its holding. As noted above, the Court in *Sites* explicitly held that the Sixth Amendment did not confer such a right.

to take the breath test, although a majority of that court also held that a violation of that right would not require suppression of an adverse test result in a criminal prosecution. Subsequently, in *State v. Spencer*, 750 P.2d 147, 154-56 & n.4 (Or. 1988), the Oregon Supreme Court abandoned the position of the *Newton* plurality based on the due process clause of the Fourteenth Amendment and held instead that such a right to consult counsel emanated from a state constitutional provision concerning the right to counsel in criminal cases.[18]

The third case, *Troy*, was a two-page decision by an acting judge of a county municipal court in Ohio that, as *Sites* acknowledged,[19] contained no analysis. While the Ohio judge did hold that both the Sixth Amendment – again, a ground rejected by *Sites* – and the due process clause of the Fourteenth Amendment established a right to consult counsel, the court did not explain its conclusion other than to state that the driver "needed the advice of counsel" and that "his request was not unreasonable." 303 N.E.2d at 927. Shortly after that decision, in a different case, the Ohio intermediate appellate court observed that an officer's refusal to allow a detained driver to consult counsel prior to a breath test "does not constitute an unconstitutional denial of the right to counsel," although it also noted that an Ohio statute

---

[18] The Oregon court noted that tying the right to a provision related to criminal prosecution could raise a concern about "plac[ing] the state in the position of being required under the Equal Protection Clause to have appointed counsel available at every place where an intoxilyzer was to be used," but discounted the prospect of such an interpretation. *Spencer*, 750 P.2d at 155.

[19] 300 Md. at 715.

accorded a detained driver such a right. *Siegwald v. Curry*, 319 N.E.2d 381 (Ohio App. 1974); *see also State v. Layton,* 675 N.E. 2d 862 (Ohio App. 1996).

In sum, what little case authority may have supported the federal constitutional conclusion drawn in *Sites*, that authority has largely evaporated. No other state or federal court has subsequently held that the due process clause of the Fourteenth Amendment generally establishes a pre-test right to counsel for a suspected drunk driver. Indeed, other state courts – in addition to the contrary authority noted in *Sites* – have considered and rejected the argument that a detained driver has a right to consult counsel rooted in the due process clause of the Fourteenth Amendment. *See, e.g.*, *State v. Degnan*, 305 S.C. 369 (S.C. 1991); *Brank v. State*, 528 A.2d 1185 (Del. 1987); *Dunn v. Petit*, 388 A.2d 809 (R.I. 1978); *State v. Layton*, 675 N.E.2d 862 (Ohio App. 1996); *Matter of McNeely*, 804 P.2d 911 (Idaho App. 1990); *McCambridge v. State*, 725 S.W.2d 418 (Tex. App. 1987), *aff'd*, 778 S.W.2d 70 (Tex. Crim. App. 1989); *State v. Hoch,* 500 So.2d 597 (Fl. App. 1986); *State v. DeLorenzo*, 509 A.2d 238 (N.J. Super. Ct. App. Div. 1986); *State v. Armfield,* 693 P.2d 1226 (Mont. 1984), *overruled in part on other grounds*, *State v. Reavley*, 79 P.3d 270 (Mont. 2003); *People v. Griffith*, 493 N.E. 2d 413 (Ill. App. 1986).[20]

---

[20] As best we have been able to determine, *Sites* has been cited favorably by only three decisions in other jurisdictions, all of which were unreported decisions. Two of those decisions were by the Ohio intermediate appellate court – *State v. Scarlett,* 1987 WL 16568 (Ohio App. 1987) and *City of Fairborn v. Mattachione*, 1994 WL 21877 (Ohio App. 1994) – but apparently are no longer good law as their holdings were effectively overruled by the Ohio Supreme Court in *City of Fairborn v. Mattachione*, 650 N.E. 2d 426 (Ohio 1995). While an unreported decision of the Alaska Supreme Court referred to *Sites* favorably, *Cano v. Municipality of Anchorage*, 1985 WL 1077785 (Ak. App. 1985), in Alaska a detained

(continued...)

21

Those courts that have recognized a pre-test right to consult counsel have found its source elsewhere – in a state constitutional provision, a state rule, or a state statute. *See, e.g., State v. Spencer*, 750 P.2d 147 (Or. 1988) (state constitution); *Copelin v. State*, 659 P.2d 1206 (Ak. 1983) (state statute and rule); *Friedman v. Commissioner of Public Safety*, 473 N.W.2d 828, 832 (Minn. 1991) (state constitution); *State v. Vietor,* 261 N.W. 2d 828 (Iowa 1978) (state statute); *Kuntz v. State Highway Commissioner*, 405 N.W.2d 285 (N.D. 1987) (state statute); *State v. Templeton*, 59 P.3d 632 (Wash. 2002) (state rule); *Litteral v. Commonwealth*, 282 S.W.3d 331, 333 (Ky. App. 2008) (state statute); *cf. Hall v. Secretary of State*, 231 N.W.2d 396 (Mich. App. 1975) (explicitly declining to hold that there is a constitutional right to consult counsel but reversing suspension on ground that detained driver could "reasonably" refuse test after being denied pre-test opportunity to call his attorney or his wife and being held incommunicado for seven hours); *Kunzler v. Pima County Superior Court*, 744 P.2d 669 (Az. 1987) (basing holding on state rule, although stating that rule "recognizes federal and state constitutional rights").

The United States Supreme Court may have also cast doubt on the holding in *Sites* – at least insofar as *Sites* rests on the federal Constitution – in its brief consideration of the issue in *Nyflot v. Minnesota Comm'r of Public Safety*, 474 U.S. 1027 (1985). In *Nyflot*, the Minnesota Supreme Court had rejected the contention that a detained driver has a federal constitutional right to consult counsel prior to deciding whether to take a breath test – an

---

[20] (...continued)
driver has a *statutory* right to consult counsel prior to deciding whether to take the test. *See Copelin v. Alaska*, 659 P.2d 1206 (Ak. 1983).

22

argument advanced by the driver under the Fifth Amendment, the Sixth Amendment, and the due process clause of the Fourteenth Amendment to the United States Constitution. *Nyflot v. Comm'r of Public Safety*, 369 N.W.2d 512 (Minn. 1985). The driver appealed that ruling to the United States Supreme Court, on the ground that failure to allow a pre-test consultation with counsel violated the federal Constitution.[21] The United States Supreme Court dismissed the appeal of that decision "for want of a substantial federal question,"[22] although two justices argued in dissent that the Sixth Amendment claim was worthy of the Court's consideration. Dismissals for want of a substantial federal question "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions." *Mandel v. Bradley*, 432 U.S. 173, 176 (1977). Thus, the Supreme Court's dismissal in *Nyflot* arguably forecloses federal and state courts from holding that there is a due process right to a pre-test consultation with counsel under the due process clause of the federal Constitution. *Langelier v. Coleman*, 861 F.2d 1508 (11th Cir. 1988).

Two federal courts of appeals have held that, even if the dismissal in *Nyflot* did not completely foreclose an argument based on the due process clause of the Fourteenth Amendment, that argument has no merit. *See Langelier, supra; McVeigh v. Smith*, 872 F.2d

---

[21] The appeal was brought under the pre-1988 version of 28 U.S.C. §1257, which permitted appeals to the Supreme Court from decisions of state supreme courts that involved federal questions.

[22] A review of the materials before the Supreme Court at the time it considered the motion to dismiss in *Nyflot* reveals that the Court was specifically advised of the due process analysis of the *Sites* decision. *See* Motion to Dismiss of Minnesota Commissioner of Public Safety in *Nyflot v. Minnesota Commissioner of Public Safety*, No. 85-636 (Oct. Term 1985) at pp. 9-10.

725 (6th Cir. 1989); *but see Roberts v. Maine*, 48 F.3d 1287 (1st Cir. 1995) (holding that the due process clause requires that a driver be given a reasonable opportunity to call an attorney before deciding whether to take the test, when the officer failed to advise the driver that a refusal would result in a mandatory 48-hour period of incarceration upon conviction).

Although *Sites* rested its holding on both the Fourteenth Amendment of the federal Constitution and Article 24 of the Maryland Declaration of Rights, its analysis focused almost entirely on cases construing the federal Constitution. Given the scarce support for that analysis of the due process clause of the federal Constitution, the *Sites* Court's rationale rests on a precarious footing. Of course, because the *Sites* decision was also based on Article 24, it is conceivable that this Court could hold that the State constitution confers such a right, even if the federal Constitution does not. *Cf. DeWolfe v. Richmond*, 434 Md. 444, 76 A.3d 1019 (2013) (holding that an indigent defendant in a criminal prosecution is entitled, under Article 24 of the Maryland Declaration of Rights, to State-furnished counsel at an initial bail hearing before a District Court commissioner without deciding whether that right also emanates from the due process clause of the Fourteenth Amendment).

In any event, we need not decide the continuing vitality of *Sites* to decide this case. Even if *Sites* remains good law under a State constitutional theory, the ultimate question before us is whether the violation of any such right affects the imposition of an administrative sanction under TR §16-205.1.

24

*Application of Sites in the Administrative Context*

Two prior decisions of this Court point to the resolution of the case before us – *Motor Vehicle Administration v. Richards*, 356 Md. 356, 739 A.2d 58 (1999), and *Najafi v. Motor Vehicle Administration*, 418 Md. 164, 12 A.3d 1255 (2011).[23] Neither case directly decided the consequences with respect to the administrative proceedings of a violation of the right announced in *Sites*. Dicta in one of those decisions, however, indicated that such a violation would not affect the administrative sanction.

*Richards*

In *Richards*, a detained driver refused to take a breath test and received the statutory suspension for a refusal; the suspension was upheld by an ALJ after an administrative hearing. The circuit court reversed that decision, however, on the basis that the officer lacked a justification for the initial traffic stop, although upon making the stop the officer had

---

[23] In a third decision involving an administrative proceeding and a possible violation of *Sites*, the Court did not reach the question of the effect of *Sites*. In *Motor Vehicle Administration v. Atterbeary*, 368 Md. 480, 796 A.2d 75 (2002), Atterbeary was discovered slumped over the steering wheel of his car with the engine running during the early morning hours. He was detained and initially agreed to take a breath test, but later informed the officer that he wished to speak to an attorney and declined to sign the DR-15 form. The officer considered those actions a refusal to take the test – a conclusion shared by the ALJ who upheld the suspension of Atterbeary's license under the implied consent, administrative per se law. The circuit court reversed and the MVA sought review in the Court of Appeals. This Court reiterated the holding of *Sites*, including the qualification that the right to contact counsel could not be permitted to delay the timely administration of a breath test. 368 Md. at 494-96. Ultimately, the Court did not determine whether there was a violation of the *Sites* right or what the consequences of a violation would be in the administrative context. Rather, the Court held that Atterbeary's bare invocation of the right to consult counsel, without more, did not amount to a refusal to take the test. Accordingly, there was no violation of TR §16-205.1.

25

reasonable grounds to believe the driver was intoxicated. This Court granted certiorari to consider whether the exclusionary rule applicable in criminal cases would bar the introduction of evidence of the test refusal resulting from an allegedly unlawful stop in proceedings concerning the administrative suspension. Thus, while *Richards* did not involve a violation of the due process right to consult counsel recognized in *Sites*, it is analogous: in that case, the Court assumed for purposes of analysis that a test refusal obtained as a result of a constitutional violation would have been excluded from evidence in a criminal case.

In *Richards*, the Court reviewed at some length the history and purpose of the implied consent, administrative per se law. 356 Md. at 362-68. It noted that the General Assembly had made "a deliberate effort ... to keep the criminal and administrative proceedings resulting from a suspected drunk-driving incident wholly separate." *Id*. at 366. As an example, the Court pointed out that the constitutionality of a traffic stop is not among the issues enumerated in the statute to be considered at the administrative hearing. *Id.* at 367. The Court also noted the general reluctance of courts to extend the exclusionary rule beyond criminal proceedings, given the marginal deterrent effect and substantial societal costs involved. *Id*. at 371.

With respect to the implied consent, administrative per se law, the Court cited the law's remedial purpose – "to prevent unscrupulous or incompetent persons from engaging in the licensed activity." 356 Md. at 373 (citations omitted). It also reasoned that an exclusionary rule in the administrative proceeding would have little deterrent effect, given that the MVA is a separate and independent agency from the police department. *Id*. at 371-

26

76. Finally, the Court observed that an MVA regulation created an exclusionary rule for administrative proceedings when an officer acts in bad faith, but that the ALJ had found that, whether there was a constitutional violation or not, the officer had acted in good faith. *Id*. at 378 & n. 12. The Court concluded that even if the original traffic stop violated the Fourth Amendment, an exclusionary rule should not be applied in administrative suspension proceedings under TR §16-205.1.

*Najafi*

In *Najafi*, a driver who had been detained on suspicion of driving under the influence of alcohol asked to speak with an attorney after arriving at the police station. The driver was given a cell phone and a telephone directory, but was unable to reach an attorney. The driver refused to take the breath test which, in accordance with the statute, resulted in a 120-day suspension of his driver's license.

As in the case before us, during the administrative hearing, the driver's counsel moved that the ALJ take "no action," contending that the driver was denied a reasonable opportunity to consult counsel because he was not given privacy when he was attempting to contact an attorney at the station. 418 Md. at 168-69. The ALJ rejected that suggestion, holding that "for purposes of an administrative hearing," the police officer was not required by the due process clause to allow the driver an opportunity to consult counsel. In what apparently was an alternative holding, the ALJ also concluded that the effort made by the officer to accommodate the driver's request to contact an attorney was sufficient to satisfy any such right. The circuit court affirmed the ALJ's decision, finding that there was substantial

evidence to demonstrate that the driver was given a reasonable opportunity to contact an attorney. *Id.* at 173. When the case arrived in this Court, the driver's counsel asked this Court to extend the holding in *Sites* to administrative license suspension proceedings and to hold that a denial of a driver's request to speak to counsel prior to electing whether to take a breath test is a proper ground for granting a motion for "no action." *Id.* at 174.

In *Najafi*, this Court examined *Sites* and its progeny, and derived several principles from those cases. On the one hand, it concluded that "based upon our jurisprudence, it is incumbent upon an officer to afford a detained driver the opportunity to consult counsel prior to having to decide whether to take a chemical breath test." 418 Md. at 179. On the other hand, the Court noted that in *Richards*, the Court had previously declined to extend the exclusionary rule to administrative license suspension proceedings. The Court concluded that "[i]f a detained driver is not given the right to consult counsel, there may be implications in a criminal case, such as the suppression of test results; in the administrative context, similar remedies do not exist." *Id.* at 179.

After examining cases in which this Court addressed the sufficiency of the contents of the warning given by police officers to detainees prior to requesting that they take the breath test,[24] the *Najafi* Court concluded that "[t]he due process protection prior to license

---

[24] *See Hill v. Motor Vehicle Administration*, 415 Md. 231, 239-42, 999 A.2d 1019 (2010) (information provided in the DR-15 form was sufficient to safeguard the detainee's right to due process); *Hare v. Motor Vehicle Administration,* 326 Md. 296, 299-300, 604 A.2d 914 (procedural due process did not require the officer to supplement DR-15 form with information about whether a test refusal would preclude modification of the suspension and issuance of a restricted license).

suspension…is satisfied by the procedural due process afforded by [TR] §16-205.1….” 418 Md. at 182. Looking to the facts of the case before it, the *Najafi* Court indicated that the driver's right to due process for purposes of the administrative proceeding was met when he was permitted to read the DR-15 form twice while in detention. *Id.* at 184.

In the end, the Court did not rest its decision in *Najafi* on that conclusion and its extended discussion of prior cases under TR §16-205.1, which it labeled as “dicta.” 418 Md. at 184. Rather, the Court affirmed the ALJ's conclusion, also affirmed by the circuit court, that the driver in the case before it had been given adequate opportunity to contact counsel. *Id*.

*Summary*

In the context of a criminal prosecution, the *Sites* decision recognized a qualified due process right of a detained driver to consult with counsel before deciding whether to take a breath test. That right was qualified in that it was subsidiary, depending on the circumstances of each case, to the public interest in conducting the test in a timely fashion – an assessment on which courts are to accord “great deference” to the judgment of the police officer. As outlined above, the precise constitutional foundation of *Sites* is open to question.[25] But even if such a right is found to exist and might require the suppression of a

_____

[25] The amicus brief supporting Ms. Deering's position suggested a statutory basis for a requirement that a detained driver be permitted a pre-test consultation with counsel and for its consideration at the administrative hearing – an argument that Ms. Deering's counsel adopted at oral argument. Among the issues that may be considered by the ALJ at an administrative hearing is “whether the police officer requested a test after the person was fully advised, as required under [TR §16-205.1(b)(2)], of the administrative sanctions….”

(continued...)

test result or refusal in a criminal case, that does not necessarily require exclusion of the test result or refusal in an administrative proceeding. As this Court outlined in *Richards*, an exclusionary rule in the administrative context carries substantial societal costs with little deterrent effect.[26] As the dicta in *Najafi* indicated, that reasoning leads to the conclusion that a test result or refusal should not be suppressed in an administrative proceeding even if it was obtained in violation of *Sites*.

A substantial argument could be made that the record in this case does not reveal a violation of the right recognized in *Sites*. It is evident from the circumstances of Ms. Deering's detention that the officer was under a fairly severe time constraint to administer the test within two hours, given that he had to transport her to the State police barracks for

---

[25] (...continued)
TR §16-205.1(f)(7)(i)3. Essentially, the amicus argues that a driver who is denied an opportunity to consult counsel is not "fully advised" of the sanctions that could be imposed at the time the officer requests that the driver take the test. However, the "advice" referred to in that provision, as the cross-referenced statutory provision makes clear, is the information that the *officer* is obligated to provide when requesting the test; the statute does not provide that the obligation may, much less must, be satisfied by an opportunity to consult counsel. In any event, Ms. Deering does not contend that the officer in her case failed to advise her correctly or misled her in some manner.

The Legislature is, of course, free to create a statutory requirement that an officer allow a detained driver a pre-test opportunity to consult with counsel. To date, it has not done so.

[26] Ms. Deering states that the relief that she seeks is not a "traditional exclusionary rule," but simply that "no action" be taken as a result of her test result. Nevertheless, the relief she seeks is the exclusion of her test result from the administrative proceeding and, as a result, the elimination of the basis for her administrative suspension. However one labels that request, *Richards* made clear that suppression of the test result or refusal in an administrative proceeding is not required, even if that test result or refusal is the product of a constitutional violation.

that purpose. While it is clear that Ms. Deering asked the officer if she could contact an attorney, it is not at all clear that she communicated to the officer her belief that she could find an attorney on short notice in the early morning hours. Given the importance that the *Sites* decision accorded to timely administration of a test and its deference to the judgment of police officers, there is a strong argument that the circumstances of Ms. Deering's breath test were consistent with *Sites*.

The ALJ in this case, however, did not resolve the *Sites* issue on that ground. Rather, she made the legal determination that an opportunity to call a lawyer was "not necessary in the admin[istrative] context." Thus, the ALJ based her decision on a legal determination that the fact that a detained driver is not given a reasonable pre-test opportunity to consult counsel does not preclude an administrative suspension based on an adverse test result.

Ms. Deering's case thus presents this Court with an opportunity either to confirm the dicta in *Najafi*, or to disclaim it. Given the clearly expressed legislative intent in the implied consent, administrative per se law to remove impaired drivers from the road, to encourage detained drivers to submit to a test measuring impairment, and to obtain timely and accurate measures of impairment – all of which contribute to public safety and discourage or eliminate a serious hazard on the roadways – we confirm the dicta in *Najafi* that a violation of the right recognized in *Sites* does not require suppression of the test result or refusal in proceedings concerning the administrative suspension of the driver's license.

**Conclusion**

We hold that, even if a suspected drunk driver is denied the opportunity to consult counsel before deciding whether to take a breath test under the implied consent, administrative per se law, the driver remains subject to the administrative license suspension that the statute assigns to a test refusal or a particular test result. Accordingly, the ALJ properly upheld Ms. Deering's suspension.

**JUDGMENT OF THE CIRCUIT COURT FOR SOMERSET COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE PRESIDING OVER RESPONDENT'S LICENSE SUSPENSION HEARING. COSTS TO BE PAID BY RESPONDENT.**