REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1124

September Term, 2015

PINEY ORCHARD COMMUNITY
ASSOCIATION, et al.

v.

MARYLAND DEPARTMENT OF
THE ENVIRONMENT, et al.

Meredith,
Berger,
Eyler, James R.
      (Senior Judge, Specially Assigned),

JJ.

Opinion by Berger, J.

Filed:  December 1, 2016

This appeal arises from a decision by Appellee, the Maryland Department of the Environment ("MDE" or "the Department"), to issue a refuse disposal system permit to Appellee, Tolson and Associates, LLC ("Tolson") on November 24, 2014. The Tolson Rubble Landfill permit ("permit" or "the permit") authorized Tolson to construct and operate the Tolson Rubble Landfill ("Tolson Landfill" or "the Landfill") located on Capital Raceway Road in Anne Arundel County, Maryland. Although it was not issued until 2014, Tolson applied for the permit in July of 2002.

Appellants,[1] Piney Orchard Community Association, et al. ("Piney Orchard"), filed a petition for judicial review in the Circuit Court for Anne Arundel County on December 19, 2014, challenging MDE's grant of the permit to Tolson on the grounds that MDE did not comply with Md. Code Ann., Environment Article ("EN"), § 9-210(a)(3)(i).[2] The

---

[1]  Appellant, Piney Orchard Community Association, represents a group of concerned citizens, who participated in the public comment process for the Tolson permit. Co-Appellants include Earthreports, Inc. (dba Patuxent Riverkeeper), and eight Maryland residents: Jeffrey R. Andrade, Louise H. Keister, Peter Hanan, Robert Bochar, Kirsten Whitley, Michael C. Davie, Erika Garrett, and Robert Garrett.

[2]  Piney Orchard has initiated two other related cases, including an administrative challenge to Appellees' request for a temporal variance to allow time to finish constructing the landfill, and a third case in the circuit court seeking declaratory and injunctive relief, which is currently on appeal in this court (*Piney Orchard Comty. Ass'n v. Maryland Dep't of Env't.*, Case No. 1824, Sept. Term 2015). MDE is not a party to Case No. 1824, which arises from an action filed by Appellants against other Appellees in this appeal. On January 20, 2016, this Court denied Appellants' motion to consolidate this appeal with Appellants' separate appeal in Case No. 1824.

2

circuit court affirmed MDE's decision to grant the permit. Appellant Piney Orchard timely

noted an appeal to this Court.

On appeal, Appellants present two issues for our review,[3] which we rephrase as

follows:

> 1. Whether the Maryland Department of the Environment complied with § 9-210(a)(3) of the Environment Article of the Maryland Code in issuing the Tolson Rubble Landfill permit.
>
> 2. Whether the trial court erred in finding that Bills 21-14 and 34-03 do not apply to the Tolson Rubble Landfill permit.

For the reasons discussed below, we shall affirm the judgment of the Circuit Court

for Anne Arundel County.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.     The Permit Approval Process**

MDE is the State agency vested with authority to regulate the installation, alteration,

and extension of refuse disposal systems. *See* EN §§ 1-101(k), 9-204(d); *see also* COMAR

---

[3]   Appellant, Piney Orchard, presented the issues as follows:

> 1. Whether MDE's decision to approve the rubblefill permit adequately articulated how the proposed rubblefill satisfied the requirement in Env't Art., section 9-210(a)(3)(i) that the rubblefill "meets all applicable county zoning and land use requirements."
>
> 2. If MDE adequately articulated how the proposed rubblefill satisfied Env't Art., section 9-210(a)(3)(i), did the lower court err when it stated in *dicta* that Bill 21-14 and Bill 34-03 had no retroactive effect.

3

26.04.07.03B(1). A rubble landfill site, like the one that Tolson proposed to build, is a refuse disposal system, which requires a permit from MDE. Once an application is submitted to MDE, MDE begins a complex review that proceeds in three "phases." COMAR 26.04.07.13-.18. At the completion of each of these phases, the applicant must submit a report, which is reviewed and approved by MDE's Solid Waste Management Program before the next phase begins.

Phase 1 of this process -- and the part that is most important to this case -- primarily entails a preliminary review of the application and the site itself and an opportunity for a public informational meeting, during which MDE accepts and responds to comments from members of the public. COMAR 26.04.07.14; *see also* EN § 9-210(a). Phase 2 focuses on the soil, geology, and hydrology of the proposed site. COMAR 26.04.07.15. During Phase 3, MDE compares the applicant's engineering plans and reports with MDE's technical regulatory requirements and ensures that the proposed landfill will be constructed in a manner that protects public health, public safety, and the environment. COMAR 26.04.07.16.

Pursuant to EN § 9-210(a), after MDE has reported the findings of its preliminary Phase 1 in writing to the county's chief executive official and planning commission, it must cease processing the application until the County has completed its review of the site "and has provided to the Department a written statement that the refuse disposal system: (i) Meets all applicable county zoning and land use requirements. . . ." EN § 9-210(a)(3)(i). The statute makes clear that the three steps required by EN § 9-210(a) must be followed in

4

this sequence. EN § 9-210(a) and (b). Furthermore, MDE completes most of Phase 1 by the time it requests the County's evaluation and certification of the site, except for the public notice and opportunity for an informational meeting. Critically, MDE may not complete Phase 1 and proceed to Phase 2 until it has received the statement from the County certifying the site's compliance with local zoning and land use codes. *See* EN § 9-210(b). Although MDE is the agency responsible for ensuring compliance with State laws and regulations, the County is responsible for determining whether a proposed site meets county zoning and land use requirements. *See* EN § 9-210(a)(3)(i).

After all three phases of MDE's review, MDE prepares a draft permit and tentative determination and holds a public hearing on the tentative determination. EN § 1-604. Depending on the comments received during the public comments period, MDE may be required to prepare and issue a final determination to approve the permit. EN § 1-601(c). Pursuant to EN § 1-601(c), if a party "participated in a public participation process through the submission of written or oral comments," that party may petition for judicial review to challenge the final determination to issue the permit. EN § 1-601(c).

Judicial review must be "on the administrative record before the Department and limited to objections raised during the public comment period," with minor exceptions. § 1-601(d)(1). Although a party to an action for judicial review "may not challenge the applicant's compliance with zoning and land use requirements," such a party may question whether MDE complied with § 9-210(a)(3). EN § 1-605(d). In other words, a party to an action for judicial review may challenge whether the County completed its evaluation of a

5

proposed site and submitted a written statement to MDE certifying the site's compliance with county zoning and land use requirements, and whether the site "[i]s in conformity with the county solid waste plan." EN § 9-210(a)(3).

**B.      The Tolson Refuse Disposal Permit**

The Tolson Landfill is located within a previously excavated sand and gravel mine. The landfill spans four lots covering a total of approximately 72 acres of land in Anne Arundel County. This location has been the site of sand and gravel mining for over 40 years, and mining and related operations are currently being conducted on other areas of the site. Landfill operations began on the mine in the early 1980s. In 1993, the Anne Arundel County Board of Appeals issued a special exception for the Tolson site, which permitted the construction and operation of a rubble landfill on the site. A rubble landfill is "a sanitary landfill permitted under State law and regulation as a rubble landfill." A.A.C. § 18-1-101. A rubble landfill accepts only trees, land clearing, construction, or demolition debris. *See* EN § 9-210(c)(2).

A special exception is an exception to the current law in effect in the zoning district in which a "nonconforming use" of land is located, granted by the Office of Planning and Zoning. *See* A.A.C. §§ 18-1-101(70), § 18-15-101(d). A special exception "terminates when the use ceases operation for 12 consecutive months or when the scope of the use is so significantly reduced during the 12-month period as to change its nature or character." A.A.C. § 18-15-104(a). The special exception granted in 1993 for the site on which the Tolson operation was located was operative at the time MDE issued the Tolson Permit.

6

On July 31, 2002, Tolson applied for a Refuse Disposal Permit. As part of the application process, and pursuant to the statutory requirements of EN §9-210(a)(3), the County evaluated the site and determined whether the facility complied with local zoning and land use laws. On August 28, 2002, the Director of the Department of Public Works, Ronald E. Bowen, and Planning and Zoning Officer in the Office of Planning and Zoning for Anne Arundel County, Denis Canavan, sent MDE a letter stating "Tolson and Associates, L.L.C. proposed Rubble Landfill in the Crofton Area of Anne Arundel County meets all applicable zoning requirements and conforms to the current Solid Waste Management Plan." There is no dispute that the County completed its review of Tolson's proposed rubble landfill and that it had provided to MDE a written statement that the landfill met the statutory requirements prior to MDE's continuation of the permit process. MDE received the completed Phase 1 Report on March 25, 2003.

MDE held an informational meeting on the permit application on July 15, 2004 after publishing a public notice of the meeting in *The Capital* and *The Maryland Gazette* newspapers on June 30, 2004 and July 7, 2004. MDE continued to process Tolson's application through the remaining two phases of the complex approval process. The Phase 2 Report was completed on November 1, 2006, and the Phase 3 Report was completed November 30, 2009.

On August 3 and 10, 2011, MDE published its Tentative Determination to issue the permit to Tolson in *The Capital* and *The Maryland Gazette* newspapers. On August 18, 2011, MDE held a second informational meeting as well as a public hearing on the tentative

7

determination. In its Response to Comments for the Tolson & Associates Rubble Landfill -- a 65-page document sent to concerned citizens who had participated in the permit approval process -- MDE categorized hundreds of oral comments made at the public hearing and written comments received by MDE regarding the Tolson permit into several categories and provided detailed responses. MDE altered conditions of the permit with many of these public concerns in mind and in its Report of Findings, dated January 28, 2014, MDE recommended 12 conditions be added to the permit, but found "that the technical, statutory and regulatory requirements of the application process have been satisfied . . . ."[4] On November 21, 2014, MDE sent letters to concerned citizens, including Piney Orchard, to notify them of its final determination to issue the permit authorizing the construction and operation of the landfill. In its Notice of Final Determination, MDE stated that the draft permit was modified subsequent to the public hearing in response to the concerns of members of the public. The letter provided that MDE

> found the application to be technically complete and in compliance with the applicable State laws and regulations. The Final Determination is based upon the review of the permit application and supporting documents submitted by the applicant, and upon testimony and evidence presented at the public hearing held on August 18, 2011 at the Crofton Elementary School.

Thereafter, MDE issued its Final Determination, effective November 24, 2014, granting Tolson the permit to operate the rubble landfill. Tolson and its affiliates commenced

---

[4] MDE found that all requirements had been satisfied, "with the exception of the submittal of a surety bond," which Tolson later satisfied.

construction related to its rubble landfill activities at the site on the same day. Appellants

timely filed their petition for judicial review in the Circuit Court for Anne Arundel County.

## C.     Procedural History

Piney Orchard challenged MDE's decision to approve the permit on the grounds

that, as they interpreted it, § 9-210(a)(3)(i) "mandates the conclusion that the proposed

rubble landfill complies with local zoning laws at *the time of application*, at the *time of*

*issuance* of the permit, and at the time that *applicant begins to construct* the [rubble

landfill]." Because, as Piney Orchard argued, Bill No. 21-14[5] was passed before MDE

issued the permit, and the bill prohibited rubble landfills within residential areas of Anne

Arundel County, the Tolson landfill did not comply with local zoning regulations. Piney

Orchard asserted that "[t]he record lacks any statement by MDE that the proposed [rubble

landfill] complies with the [c]ounty current zoning laws." They further noted that MDE

should not, therefore, have issued the permit due to this failure to comply.[6]

In this appeal, Piney Orchard argues that "MDE erred legally when it determined in

2014 that the proposed [rubble landfill] meets all applicable county zoning and land use

requirements based on the County's statement in 2002 that the proposed [rubble landfill]

---

[5] Bill No. 21-14, which is now codified as A.A.C. § 18-4-106, became effective January 1, 2015.

[6] During oral argument, however, Piney Orchard acknowledged that the statute provides no deadline after which MDE must receive a new or updated letter from the County stating that the site is in compliance with all zoning and land use laws currently in force.

9

complied at that time with the County's zoning law." Piney Orchard's argument is based

on the premise that MDE, a state agency, determines whether a rubble landfill meets local

zoning regulations, rather than simply whether it has received a written statement from the

County certifying the facility's compliance with local zoning regulations. Indeed, Piney

Orchard argues that,

> [S]ection 9-210(a)(3)(i) required MDE to make the factual
> finding that the proposed [rubble landfill] complied with local
> zoning and land use laws when MDE issued the permit in 2014.
> Instead, MDE stated that the proposed [rubble landfill] met all
> applicable zoning requirements in 2002.

Tolson and MDE maintain that the statute creates no such requirement. As such,

the statute did not require MDE to make a "factual finding" regarding the Tolson Landfill's

compliance with local zoning regulations before it issued the permit, except to the extent

that it had received a letter from the County stating the facility's compliance. Moreover,

Tolson asserts that MDE must receive only one statement from the County, not multiple

statements at each phase in the process, and not even an additional statement just before

the permit was approved in 2014. The circuit court agreed with Tolson and MDE.

## DISCUSSION

### I.    Standard of Review

In reviewing the decision of an agency, we "look[] through the circuit court's . . .

decision[], although applying the same standards of review, and evaluate[] the decision of

the agency." *People's Counsel v. Surina*, 400 Md. 662, 681 (2007); *see also Long Green*

10

*Valley Ass'n v. Prigel Family Creamery*, 206 Md. App. 264, 273 (2012) ("'On appellate review of the decision of an administrative agency, this Court reviews the agency's decision, not the circuit court's decision.'") (quoting *Halici v. City of Gaithersburg*, 180 Md. App. 238, 248 (2008)).

Because no statute sets forth an express standard of review, we review MDE's decision under the substantial evidence and arbitrary and capricious standards. *See MDE v. Anacostia Riverkeeper*, 447 Md. 88, 118-19 (2016). We are "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Halici*, 180 Md. App. at 248 (internal quotation marks and citations omitted). "In this context, substantial evidence, as the test for reviewing factual findings of administrative agencies, has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tomlinson v. BKL York LLC*, 219 Md. App. 606, 614 (2014) (quoting *Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 568–69 (1998)).

"We have characterized the arbitrary and capricious standard of review as one that is 'extremely deferential.'" *Anacostia Riverkeeper*, 447 Md. at 120 (quoting *Harvey v. Marshall*, 389 Md. 243, 299 (2005)). "Our review of the agency's factual findings entails only an appraisal and evaluation of the agency's fact finding and not an independent decision on the evidence." *Tomlinson*, 219 Md. App. at 614 (quoting *Catonsville Nursing Home, Inc.*, 349 Md. at 568–69). The paramount question we consider is "whether a

reasoning mind reasonably could have reached the factual conclusion the agency reached." *Anacostia River*, 447 Md. at 120 (quoting *Najafi v. Motor Vehicle Admin.*, 418 Md. 164, 173 (2011)).

This Court reviews, *de novo*, the agency's conclusions of law, *see Schwartz v. Md. Dep't of Natural Res.*, 385 Md. 534, 554 (2005); however, "a degree of deference should often be accorded the position of the administrative agency." *Assateague Coastkeeper v. MDE*, 200 Md. App. 665, 690 (2011) (quoting *Najafi*, 418 Md. at 173–74). An administrative agency's interpretation of a statute that the agency administers should ordinarily be given considerable weight by reviewing courts. *Id.*

We review an agency's decision in the light most favorable to the agency, because "its decisions are prima facie correct and carry with them the presumption of validity." *Bereano v. State Ethics Comm'n*, 403 Md. 716, 732 (2008) (quoting *Anderson v. Dep't of Safety & Corr. Servs.*, 330 Md. 187, 213 (1993)); *see also Anacostia Riverkeeper*, 447 Md. at 120 (quoting *Najafi*, 418 Md. at 173) ("[W]e shall review the agency's decision 'in the light most favorable to it.'"). Additionally, the appellant challenging an administrative agency decision bears the burden of establishing that the agency's decision was incorrect. *Assateague Coastkeeper*, 200 Md. App. at 690.

Specific to the Environment Article, certain limitations exist on the issues properly before the court on a petition for judicial review of a refuse disposal system permit. *See* EN § 1-601. In order to file a petition for judicial review, the party must have standing under federal law and be either the applicant for the permit or have "participated in a public

12

participation process through the submission of written or oral comments, unless an opportunity for public participation was not provided." EN § 1-601(c). Section 1-605(c) of the Environment Article provides, "Judicial review shall be on the administrative record before the Department and limited to objections raised during the public comment period, unless the petitioner demonstrates that: (i) the objections were not reasonably ascertainable during the comment period; (ii) or grounds for the objections arose after the comment period." EN § 1-601(d)(1). Most importantly, a party to an action for judicial review may challenge only whether MDE complied with the requirements of EN § 9-210(a)(3), and "may not challenge the applicant's compliance with zoning and land use requirements . . . ." Thus, our review is limited to whether MDE complied with EN § 9-210(a)(3)(i), and not whether the Tolson site complied with local county zoning and land use requirements at any point during the application process.

II. **Maryland Department of the Environment Did Not Err When It Determined That The Requirements of Environment Article § 9-210(a)(3)(i) Were Met and, Relying on the Satisfaction of this Requirement, Approved the Tolson Rubble Landfill Permit.**

Piney Orchard claims in its appeal that "section 9-210(a)(3)(i) requires that MDE make the factual finding that the proposed [rubble landfill] '[m]eets all applicable county zoning and land use requirements.'" Because the verb "meets" is in the present tense, Piney Orchard argues, "section 9-210(a)(3)(i) required MDE to make the factual finding that the proposed [rubble landfill] complied with local zoning and land use laws when MDE issued the permit *in 2014*" when MDE issued the permit. Tolson contends, as they did below, that "[t]he statute does not require -- nor authorize -- MDE to seek recertification

of the application's compliance with local land use and solid waste planning requirements at any other stage in the process."

Section 9-210 of the Environmental Article provides in pertinent part:

> (a) In general. – Subject to the provisions of subsection (b) of this section, the Secretary may not issue a permit to install, materially alter, or materially extend a refuse disposal system regulated under § 9-204(a) of this subtitle until the requirements set forth in this subsection are met *in the following sequence*:
>
> > (1) Except for the opportunity for a public informational meeting, the Department has completed its preliminary phase 1 technical review of the proposed refuse disposal system;
> >
> > (2) The Department has reported the findings of its preliminary phase 1 technical review, in writing, to the county's chief elected official and planning commission of the county where the proposed refuse disposal system is to be located; and
> >
> > (3) *The county* has completed its review of the proposed refuse disposal system, and *has provided to the Department* a written statement that the refuse disposal system:
> >
> > > (i) *Meets all applicable county zoning and land use requirements;* and
> > >
> > > (ii) Is in conformity with the county solid waste plan.
>
> (b) Completion of requirements. – Upon completion of the requirements of subsection (a)(1) and (2) of this section, *the Department shall cease processing the permit application until the requirements of subsection (a)(3) of this section are met.*

ER § 9-210 (emphasis added).

14

Tolson and MDE argue that the statute's plain meaning provides a clear series of steps that must be satisfied sequentially, after which MDE may grant the permit. One such step is MDE's receipt of a written statement from the County stating the facility's compliance with county zoning and land use regulations during Phase 1 of the permit approval process.

Notably, Piney Orchard does not address whether the record contains substantial evidence to support MDE's decision that Tolson's application for a rubble landfill permit met all statutory requirements and, therefore, to issue the permit. An agency's decision carries with it the presumption of validity, and it is the appellant's burden when challenging an administrative agency decision to establish that no "reasoning mind reasonably could have reached the factual conclusion the agency reached." *Anacostia River*, 447 Md. at 120 (quoting *Najafi*, 418 Md. at 173); *see also Assateague Coastkeeper*, 200 Md. App. at 699. Similarly, Piney Orchard carries the burden of demonstrating that MDE's decision was not "rationally supported by the evidence in the record." *See Travers v. Baltimore Police Dep't*, 115 Md. App. 395, 419 (1997) (citing *Dep't of Econ. & Emp't Dev. v. Lilley*, 106 Md. App. 744, 754 (1995)).

Piney Orchard has argued that § 9-210(a)(3) requires MDE, upon issuance of the permit, to "articulate" how a proposed landfill "[m]eets all applicable county zoning and land use requirements." Our review is limited to determining whether MDE relied on substantial evidence in the record in finding that it had received a statement from the County meeting the requirements of EN § 9-210(a)(3)(i). As explained above, we hold

15

that § 9-210(a)(3) places no requirement on MDE to make any determination regarding a facility's status of compliance with local zoning and land use codes, except that it must receive a letter from the County stating its compliance before MDE may continue through the remaining phases of the process. *See* § 9-210(a)(3)(a)-(b).

In its Notice of Final Determination published in the *Maryland Gazette* and *Capital* newspapers, MDE noted that it "found the application to be technically complete" and that the decision was "based upon the review of the permit application and supporting documents submitted by the applicant, and upon testimony and evidence presented at the public hearing held on August 18, 2011 . . . ." The record contains the written statement from the Anne Arundel County Executive and the Department of Public Works, dated August 28, 2002, which provides that "this letter serves as confirmation that Tolson and Associates, L.L.C. proposed Rubble Landfill in the Crofton Area of Anne Arundel County meets all applicable zoning requirements and conforms to the current Solid Waste Management Plan." Additionally, MDE's Response to Comments is replete with explanations of the evidence MDE relied on in finding that the Tolson application satisfied the requirements of EN § 9-210(a)(3). For example, in response to a question regarding whether Tolson had supplied a statement from the appropriate local government agency concerning the consistency of the facility with the approved county comprehensive Solid Waste Management Plan, MDE described the requirement under EN § 9-210(a) and how Tolson's application satisfied that requirement:

> Section 9-210 of the Environment Article, Annotated Code of Maryland, requires that the local county provide the

16

Department with a statement that the proposed landfill meets all applicable county zoning and land use requirements, and the landfill is in conformance with the county solid waste plan. The Department received a letter from the Anne Arundel County Department of Public Works on August 28, 2002, stating that the proposed rubble landfill meets all applicable zoning requirements and conforms to the current Solid Waste Management Plan.

In response to another question regarding the impact the rubble landfill could have on new development in Anne Arundel County, MDE explained:

Decisions regarding the appropriateness of a proposed land use relative to surrounding land uses are strictly within the province of the local zoning and land use authority except those environmental issues addressed in the State's permitting process. Anne Arundel County has supplied the required documentation that local land use rules have been satisfied. This in turn satisfies the requirement of Environment Article § 9-210(a)(3)(i), which is a precondition for permit issuance.

Our review of the record, including the County's written statement, MDE's Final Determination, and MDE's comprehensive Response to Comments demonstrate that MDE relied on substantial evidence in determining that the Tolson application satisfied the requirements of EN § 9-210(a)(3)(i). Section 9-210(a)(3)(i) makes clear that MDE's only responsibility with regard to the written statement from the County is to confirm that it received a letter from the County stating that "the refuse disposal system . . . [m]eets all applicable county zoning and land use requirements" prior to continuing the permit approval process. EN § 9-210(a)(3)(i). The record, therefore, demonstrates that the County completed its review of Tolson's proposed rubble landfill and that MDE received a written statement from the County that the Tolson site "[m]eets all applicable county zoning and

17

land use requirements" at the point at which it was required by statute. Accordingly, we hold that MDE did not err in determining that Tolson's application complied with EN § 9-210(a)(3)(i), or, in relying in part on the completion of this step in its decision to approve the permit.

**A.    The Plain Language of EN § 9-210(a)(3)(i) Demonstrates That MDE was Not Required to Make a Finding of Fact That the Tolson Site Met All Applicable County Zoning and Land Use Requirements.**

The issue before us is one of statutory interpretation, and specifically, the statute's plain language. The primary objective of statutory construction is to ascertain and carry out the intention of the Legislature. *Solomon v. State*, 442 Md. 254, 265 (2015); *see also Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 346 Md. 437, 444-45 (1997) (citing *State v. Pagano*, 341 Md. 129, 133 (1996)). To ascertain that intention, "the very language of the statute serves as the primary source of the legislature's intent." *Kona Properties, LLC v. W.D.B. Corp.*, 224 Md. App. 517, 561 (2015). When the language of the statute is clear, we need not look any further to "ascertain and effectuate the intent of the Legislature." *Baltimore Cnty. v. Balt. Cnty. Frat. Order of Police*, 439 Md. 547, 572 (2014) (quoting *Bowen v. City of Annapolis*, 402 Md. 587, 613 (2007). The goal of effectuating the intent of the legislature is accomplished "by construing 'the plain language of the statute, and ordinary, popular understanding of the English language.'" *McHale v. DCW Dutchship Island, LLC*, 415 Md. 145, 171 (2010) (quoting *Rosemann v. Salsbury Clements*, 412 Md. 308, 314-15 (2010)).

18

We must also be careful not to expand the scope of what the legislature intended. "The Court may not insert or omit terms to make a statute express an intention not reflected in the statute's original form." *Marriott Emps.*, 346 Md. At 444–45; *see also Thompson v. State*, 412 Md. 497, 506 (2010) ("A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.") (quoting *Price v. State*, 378 Md. 378, 387 (2003)). On the other hand, we read the statute "as a whole to ensure that no word, clause, sentence, or phrase is rendered meaningless." *Bourgeois v. Live Nation Entm't, Inc.*, 430 Md. 14, 27 (2013); *see also Montgomery Cnty. v. Buckman*, 333 Md. 516, 523-24 (1994) ("[A]bsent a clear intent to the contrary, a statute is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory.") (citations omitted).

In its brief, Piney Orchard argues that MDE is required "to make the factual finding that the proposed [rubble landfill] complied with local zoning and land use laws."[7] MDE is not required, nor permitted, however, to evaluate or make a factual finding of a facility's

---

[7] Piney Orchard argues in its Reply Brief that

> "Citizen-Petitioners' [sic] do not argue that the applicable law required MDE itself to analyze whether the rubblefill meets all applicable county zoning and land use requirements. Rather, Citizen-Petitioners argue that the law required MDE to articulate that it had received from the County "a written statement" that the rubblefill "[m]eets all applicable county zoning and land use requirements" in 2014, when it issued the permit."

19

compliance with county zoning and land use requirements. In announcing its decision, the

circuit court found that:

> Petitioners['] frustration and contention is that the County's
> certification letter, written in 2002, and relied on by MDE is
> stale . . . . Contrary to [Appellants'] contentions, the statute
> does not require the County to re-certify the site's compliance
> with local land use requirements at any other stage in the
> process. Simply put, the statute contemplates first that MDE
> receive certification from the County. While waiting for
> certification, MDE temporarily stops processing the
> application. Upon receipt from the County that local zoning
> and land use requirements are satisfied, MDE is satisfied and
> continues the phase review of the application.
>
> Here, the record is clear that MDE received a written statement
> from the County indicating that local zoning and land use
> requirements were satisfied. MDE's receipt of this letter
> satisfied the requirements of § 9-210(a). MDE proceeded to
> complete the remaining steps in the permitting and review
> process. Granted, the process took many years. However, the
> statute does not require that MDE receive a similar letter from
> the County after a certain number of years.

Again, the statute requires only that the County has evaluated the facility and "provided to

the [MDE] a written statement that the refuse disposal system . . . [m]eets all applicable

county zoning and land use requirements." EN § 9-210(a)(3)(i). MDE ceases reviewing

the application for compliance with applicable state regulations until it has received a

statement from the County regarding county zoning regulations. Thereafter, MDE

completes Phases 2 and 3 of the process. Throughout these distinct phases, MDE and the

County maintain separate and distinct roles. Notably, the plain language of

EN § 9-210(a)(3) does not require or permit MDE to evaluate a facility's compliance with

20

local zoning and land use codes.[8]  No evaluation or factual determination on the part of

MDE is required by the statute, except to determine whether it has received the statement.

**B.**    **Section § 9-210(a)(3)(i) of the Environment Article Does Not Require MDE to Receive an Updated Written Statement of Compliance from the County.**

Piney Orchard argues that because EN § 9-210(a)(3)(i) uses the term "meets," which

is in the present tense, "[§] 9-210(a)(3) require[s] MDE to make the factual finding that the

proposed [rubble landfill] complied with local zoning and land use laws when MDE issued

the permit *in 2014.*" (emphasis added).  In other words, Piney Orchard argues that MDE

never received an adequate written statement from the County certifying that the Tolson

Landfill "[m]eets all applicable county zoning and land use requirements" at all, because

---

[8]  We do not typically delve into the legislative history of a statute when our review of the plain language reveals no ambiguity.  *W.R. Grace & Co. v. Swedo*, 439 Md. 441, 453–54 (2014) (citing *Price*, 378 Md. at 387 (2003)).  We note, however, that even the legislative history behind EN § 9-210 supports our interpretation that its plain language places any responsibility to evaluate the proposed site with the County and not MDE.  Prior to 1988, the statute did require MDE to confirm, prior to "issu[ing] a permit to install, materially alter, or materially extend a landfill . . ." that a proposed landfill "meets all zoning and land use requirements of the county where the landfill is or is to be located . . . ."  *See* EN § 9-210 (1987); *see also Maryland Reclamation v. Harford County*, 414 Md. 1, 38 (2010).  The General Assembly removed any responsibility of MDE to ensure compliance with local codes from the statute when it was amended in 1988 to require, instead, a written statement from the applicant that the proposed landfill "meets all applicable zoning and land use requirements." *See, e.g.*, EN § 9-210 (1988).  In 1992, the statute was amended again to a form similar to the current language of EN § 9-210, and it now requires the County to review the site and provide MDE with a written statement confirming the site's compliance with local zoning and land use requirements. *See* EN § 9-210 (1992).  Thus, the legislative history demonstrates that the General Assembly intended to eliminate from the province of MDE any duty to evaluate a proposed site for its compliance with local county zoning and land use requirements and to maintain the separate and distinct roles of MDE and the County.

the County's letter did not confirm that the Tolson site complied with local zoning and land use requirements at the time MDE issued the permit. EN § 9-210(a)(3)(i). Piney Orchard, however, provides no authority to support this interpretation, and fails to demonstrate why the present-tense form "meets," under these or similar circumstances, is inconsistent with MDE's interpretation -- that § 9-210(a)(3)(i) requires a statement from the County about a facility's compliance when the County performs its evaluation of the site when required by EN § 9-210.

We are not persuaded by Piney Orchard's interpretation of EN § 9-210(a)(i). The County's written statement is based on the state of a facility's compliance with local zoning and land use codes at the time the County is required to evaluate the facility and send the written statement to MDE. To hold otherwise would render meaningless the statute's requirement that each step be completed in sequence, especially when considered in conjunction with EN § 9-210(b), which requires MDE to stop processing the application until it receives the written statement from the County. EN § 9-210(a) and (b).

The point at which a written statement from the County is required is an important and defined moment in the series of required steps, because MDE must stop processing a particular application until the statement is received. *See* EN § 9-210(b). Two additional phases, and many other time-consuming steps, follow MDE's receipt of the County's written statement of compliance with local zoning codes. The statute further prohibits MDE from progressing any further through the process until it receives the letter from the County at this point. Moreover, Piney Orchard cannot point to any deadline or "expiration

22

date" in the statute, after which a written statement from the County becomes "stale" and no longer meets the statutory requirements of EN § 9-210(a)(3). We, therefore, hold that the statute does not require MDE to obtain the County's written statement within a certain proximity of time to the date it approves the permit.

The statute does not require MDE to "reevaluate" a facility's compliance with local codes at the time or within some defined period within which it issues the permit. As part of the application approval process, EN § 9-210(a) requires MDE to complete three steps in a defined sequence. *See* EN § 9-210(a). Part of the third step in this process, and the provision that Piney Orchard holds out as support for the error in MDE's approval of the permit, is that the County must "complete[] its review of the proposed refuse disposal system, and . . . provide[] to the [MDE] a written statement that the refuse disposal system: (i) Meets all applicable county zoning and land use requirements . . . ." EN § 9-210(a)(3)(i). Indeed, under § 9-210(b), after the first two requirements under § 9-210(a) are met, MDE must stop processing the application until it receives this written statement from the County pursuant to § 9-210(a)(3).

Piney Orchard implies that we must read into the statute a certain proximity of time to MDE's issuance of the permit during which it must receive the County's statement certifying compliance with local zoning and land use codes. Piney Orchard does not explain, however, whether this should be accomplished by requiring MDE to obtain multiple statements from the County confirming the Tolson Landfill's compliance with local zoning codes at various points throughout the application process. For MDE to

23

comply with the procedural requirements of EN § 9-210(a)(3)(i) *and* Piney Orchard's interpretation of the word "meets," however, MDE would either have to receive a letter from the County during Phase 1 that predicts the site's future compliance at the end of the application process, or request an updated statement from the County just before issuing a permit.

To the extent Piney Orchard argues that MDE should have received an updated statement from the County, Section § 9-210 does not require, either explicitly or implicitly, a second or "follow up" statement from the County. The statute requires, instead, that MDE follow a particular sequence of steps and mentions the written statement of compliance from the County only once -- near the end of Phase 1. *See* EN § 9-210(a)(3)(i). Based on the plain language of the statute, MDE's sole obligation during Phase 1 of the permit application process regarding any duty to ensure compliance with local zoning and land use regulations is to receive a statement from the County certifying that the particular facility meets the local requirements. Only then may the MDE continue to process the application. If the General Assembly had intended to require MDE to receive an updated written statement from the County at that later date, it could have included that requirement in the statute.

Following Piney Orchard's interpretation of EN § 9-210 would violate our canon of statutory construction that we must not "insert or omit terms to make a statute express an intention not reflected in the statute's original form." *Buckman*, 333 Md. at 524. Nothing in the statute requires MDE to receive the written statement, or an updated statement, from

24

the County just before issuing the permit. Moreover, this reading of EN § 9-210(a) -- that MDE must receive the written statement from the County that confirms a facility's compliance with local zoning codes at a later time than when the statute itself requires it during the approval process -- defies common sense. *See Marriott Emps.*, 346 Md. at 444-45 ("Common sense must guide us in our interpretation of statutes . . . ."). Particularly when the statute is read as a whole, Piney Orchard's interpretation contradicts the clear mandate for MDE to stop processing the application until it receives the written statement from the County.

As the circuit court acknowledged, there is no debate over the fact that "the process for applying and eventually obtaining a permit is time consuming" and "on average . . . takes between three (3) and five (5) years." In this case, the total time from the date of Tolson's permit application until it was finally approved took more than twelve (12) years. The rubble landfill permit approval process is clearly a long and complex endeavor. Nevertheless, the requirements of MDE under EN § 9-210(a)(3)(i) are clear. The MDE is not required to request an updated written statement of compliance from the County after a certain period of time prior to issuing the permit. For these reasons, MDE did not err when it determined that the Tolson application complied with the requirements of EN § 9-210(a)(3)(i) and approved the permit.

**IV.    The Circuit Court Did Not Err When It Found That Anne Arundel County Bills 21-14 and 34-03 Did Not Apply Retroactively.**

The second dispute in this case concerns whether the circuit court erred in finding that two Anne Arundel County zoning ordinances -- Bill 21-14 and Bill 34-03 -- did not

apply to the Tolson Landfill. Piney Orchard argued that the passage of the two bills supported their contention that the County's letter did not comply with EN § 9-210(a)(3)(i). As a result, Piney Orchard contended that it was error for MDE to issue the permit for the Tolson site.

The two bills concern local zoning laws that relate to landfills within Anne Arundel County. Bill 21-14 precludes the grant of new special exceptions for rubble and land-clearing debris landfills in residential districts within Anne Arundel County. Bill 21-14, subsequently codified as A.A.C. § 18-4-106, took effect on January 1, 2015. Relevant to the application of Bill 21-14 is A.A.C. § 18-2-101(b)(1), which provides that "an application for a special exception or variance filed on or before April 4, 2005 shall be governed by the law as it existed **prior** to May 12, 2005 for the special exception or variance as approved." A.A.C. § 18-2-101(b)(1) (emphasis added). As explained above, the Anne Arundel County Board of Appeals issued a special exception for the Tolson site in 1993, twelve years prior to 2005.

Bill 34-03[9] provides certain requirements for both rubble and land-clearing debris landfills and addresses vehicular access to the site. Specifically, Bill 34-03 sets forth requirements for rubble landfills within residential districts, and expressly provides that:

> [A]ll vehicular access to the site is provided from a collector
> street, an arterial roadway, a major highway, or a local road
> that serves only industrially-zoned or commercially-zoned
> property between the facility entrance and the first intersecting

---

[9] Bill 34-03 was codified as A.A.C. § 12-241.1(2) at the time the Tolson site was granted a special exception in 1993; it was recodified in 2005 as A.A.C. § 18-11-150(2).

26

collector street, arterial roadway, or major highway in all directions.

A.A.C. § 12-241.1(2).

Piney Orchard argued below that the Tolson site did not comply with this vehicular access requirement. A central point of contention regarding the applicability of Bill 34-03 to the Tolson site was that the special exception, granted in 1993, allowed for the mined areas of the site to be used as a rubble landfill for construction and demolition waste and provided specific access requirements. In their original complaint, Piney Orchard conceded that a special exception was granted to the Tolson site and that the special exception authorized a rubble landfill. Critical to the applicability of Bill 34-03, the special exception required vehicular access to be restricted to Capital Raceway Road (referred to as "Racetrack Road" in 1993). The special exception became final on December 8, 1993. The circuit court ultimately found that neither bill raised by Piney Orchard applied to the Tolson site.

Piney Orchard argues that the circuit court's discussion of the Landfill's compliance with Bills 21-14 and 34-03 is mere *dicta*, "was not essential to the lower court's judgment," and "conflicted with Maryland law."[10] For its part, Tolson argues that the circuit court's

---

[10] The significance of whether the circuit court disposed of the issue of the applicability of the two zoning ordinances relates to another case filed by Piney Orchard on appeal to this court (Case No. 1824, Sept. Term 2015). In Case No. 1824, Piney Orchard originally sought an injunction and declaratory judgment based on the applicability of the county ordinances on the Tolson Landfill. There, in an alternative ruling, the circuit court found that the doctrine of collateral estoppel barred Piney Orchard from raising the issue of whether the two county bills applied to the Tolson Landfill site. That Court concluded

27

finding that Bills 21-14 and 34-03 do not apply to the Tolson Landfill was legally correct and fully disposed of the issue. We, therefore, address whether the circuit court's finding that the two zoning ordinances did not apply to the Tolson site was legally correct. Ultimately, we conclude that the circuit court did not err in its finding that County Bills 21-14 and 34-03 do not apply to the Tolson site. We, therefore, affirm the judgment of the circuit court.

### A. The Circuit Court's Conclusion that Bills 21-14 and 34-03 Do Not Apply to the Tolson Site Is Not *Dicta* and Fully Disposed of the Issues.

In an effort to avoid the consequence of the circuit court's findings that the two county bills do not apply to the Tolson site, Piney Orchard insists that the court's analysis is mere *dicta*[11] and that the applicability of the bills to the Tolson site was not essential to

---

that the circuit court in the present case (Case No. 1124, Sept. Term 2015) had already decided the same issue. In this appeal, Piney Orchard requests that, if we determine that MDE did not err in granting the permit to Tolson, we "clarify that [we] do not base any affirmation of the [Landfill] permit on the lower court's *dicta* that Bill 21-14 and Bill 34-03 had no retroactive effect."

[11] The term *dictum* refers to statements "enunciated by the court merely by way of illustration, argument, analogy or suggestion." *Bryan v. State Roads Com'n of State Highway Admin.*, 115 Md. App. 707, 713 (1997), *aff'd*, 356 Md. 4 (1999). A court's analysis of a question that was "directly involved in the issues of law," that "the mind of the court was directly drawn to, and distinctly expressed upon the subject" is not mere *dicta*. *Bowers v. State*, 227 Md. App. 310, 321-322 (2016) (quoting *Schmidt v. Prince George's Hospital*, 366 Md. 535, 551 (2001)); *see also Halliday v. Sturm, Ruger & Co.*, 138 Md. App. 136, 160 (2001) (explaining that the term *dictum* does not refer to a court's finding upon a question directly before the court).

28

the circuit court's determination.[12] When a party raises a legal issue properly before the court, and that court gives a "deliberate expression of its opinion upon that question, such opinion is not to be regarded as *obiter dictum*, *although the final judgment in the case may be rooted in another point also raised* by the record." *Bowers*, 227 Md. App. at 321-22 (quoting *Schmidt*, 366 Md. at 551 (2001)) (emphasis added).

Piney Orchard argues that, because the Court found that MDE was not required to look into whether the two bills applied, the Court's finding that the bills did not apply retroactively to the Tolson site was "not essential to the lower court's judgment that 'the County's certification letter, written in 2002, and relied on by MDE' was not stale." Indeed, Piney Orchard -- not Tolson -- raised Tolson's noncompliance with the two zoning ordinances in support of its argument that the County's written statement was "stale." Despite raising this issue and the circuit court's express findings, Piney Orchard now argues that the circuit court erred in deciding both bills were not retroactive.

Notably, the relevance of whether the two bills apply to the Tolson Landfill below related to Piney Orchard's argument that changes to local zoning laws made the County's written statement invalid. Piney Orchard argued that MDE should not have issued the

---

[12] The parties dispute the meaning of the term "*dicta*" and whether it may be used to refer to a circuit court opinion in Maryland. Tolson argues that *dicta* exists only within appellate opinions, because the term is used to distinguish between precedential and non-precedential expressions of a court's opinion. We do not attempt to provide an analysis of which courts in Maryland are capable of producing *dicta*; instead we address Piney Orchard's basic premise that the circuit court's analysis was not essential to its ruling and whether the circuit court was correct as a matter of law.

29

permit because it did not have a valid "written statement" from the County certifying that the Tolson site "[m]eets all county zoning and land use requirements" when MDE issued the permit. EN § 9-210(a)(3)(i). As discussed above, the circuit court found -- and we agree -- that MDE had no responsibility to determine whether a site continued to meet all county zoning and land use requirements. Once MDE received the written statement from the County, MDE's requirements under EN § 9-210(a)(3)(i) were satisfied. Nevertheless, because Piney Orchard presented its staleness argument, the circuit court addressed the applicability of the two bills raised by Piney Orchard. The circuit court explained:

> Petitioners contend that a twelve year old County certification letter, in this case, is too long because in the intervening years, zoning in Anne Arundel County has changed, thus, the certification letter from 2002 is no longer reflective of the actual zoning requirements of 2014.

Piney Orchard, therefore, raised the question of whether the two county ordinances applied to the Tolson site as part of its argument that MDE failed to comply with EN § 9-210(a)(3)(i). Although we look through the circuit court's decision, the issue was briefed, argued and decided by the trial court. We review the circuit court's determination on this issue, as it "plainly appears by the record to have been raised in or decided by the trial court." Md. Rule 8-131. The question of whether the two bills apply to the Tolson site was "'directly involved in the issues of law . . . and the mind of the Court was directly drawn to, and distinctly expressed upon the subject.'" *Bowers*, 227 Md. App. at 322 (quoting *Schmidt*, 366 Md. at 552).

There is no dispute that MDE received the written statement from the County at the

30

point in the process required by the statute. Changes to the zoning laws after the County issues its written statement to MDE do not invalidate the County's written statement. The circuit court's rejection of Piney Orchard's argument was essential to the court's finding that the County's letter to MDE was valid and complied with EN § 9-210(a)(3)(i). Simply put, Piney Orchard's argument was rejected by the circuit court for many reasons, only one of which was that the two zoning bills did not apply retroactively to the Tolson site. Accordingly, the circuit court's finding on this issue does not render the court's analysis on the issue of retroactivity *dicta* or leave the issue undecided.

**B.      The Circuit Court Did Not Err in Finding that Bills 21-14 and 34-03 Do Not Apply to the Tolson Rubble Landfill Site.**

Piney Orchard admits in its original complaint in this case that a special exception was in effect for the Tolson site at the time MDE issued the permit. Piney Orchard offers little explanation for its contention that the two bills apply to the Tolson site. Indeed, Piney Orchard merely implies that there is a presumption of retroactivity applicable in this case; therefore, any subsequent zoning law applicable to rubble landfills must apply to the Tolson site. The circuit court considered the applicability of each bill specifically:

> First, bill 21-14 applies to new special exceptions. The bill did not contain a retroactivity clause. MDE granted the permit to Tolson in 2014, prior to the effective date of bill 21-14 of January 1, 2015. The access road issue also fails for a similar reason. First, the change to the access road requirements occurred in 2003. A change in the zoning from 2003 does not automatically invalidate a previous and properly issued special exception. Here, the special exception was properly obtained in 1993. Any changes in zoning after the special exception was obtained, without a retroactivity clause, apply prospectively. The Court is also mindful of the fact that the Board of Appeals

31

when it granted the special exception in 1993 imposed conditions on the rubblefill site to ensure that access to the site complied with the applicable zoning and land use laws.

We hold that the circuit court did not err in its determination that neither Bill 21-14 nor Bill 34-03 apply to the Tolson site.

### 1.  Bill No. 21-14 Does Not Apply to the Tolson Site.

Piney Orchard argued below that Bill 21-14 operated to essentially invalidate the special exception granted to the Tolson site.  More accurately, Bill 21-14 altered the County Code to prohibit **new** special exceptions from being granted in certain zoning categories after January 1, 2015.  Not only did the bill become effective after MDE's issuance of a rubble landfill permit to Tolson on November 24, 2014, but the bill became effective many years after the County granted the special exception to the Tolson site.  The bill does not contain a retroactivity clause and does not apply to special exceptions issued prior to January 1, 2015.  Indeed, Bill 21-14 expressly provides that it prohibits only new special exceptions within certain zoning districts.

Moreover, had the City Council intended the ordinance to apply retroactively, it could have included a retroactivity clause in the bill.  Amendments to the zoning code that prohibit new special exceptions for rubble landfills do not apply retroactively, unless provided. *See MDE v. Days Cove Reclamation*, 200 Md. App. 256, 260 (2011).  Special exceptions, in Maryland, are governed by the law at the time the special exception became final. *Richmarr Holly Hills v. American PCS*, 117 Md. App. 607, 643-44 (1997).  Here, the

32

special exception became final in 1993. Bill 21-14, therefore, does not apply to the Tolson site.

Other provisions of Article 18 of the Anne Arundel County Code support our conclusion that Bill 21-14 does not apply in this case. Pursuant to A.A.C. §18-2-101, "[a]n application for a special exception . . . filed on or before April 4, 2005 shall be governed by the law as it existed prior to May 12, 2005 for the special exceptions . . . as approved." If the General Assembly intended Bill 21-14 to apply to previously issued special exceptions, it would not only have included a retroactivity clause, but it also would have needed to amend A.A.C. § 18-2-101.

By its express terms, Bill 21-14 applies to new special exceptions. As such, it does not act to retroactively invalidate the previously issued special exception for the Tolson site. Here, Tolson had applied for -- and been granted -- a special exception for its site. As the circuit court correctly held, the special exception was properly obtained in 1993. The circuit court, therefore, did not err in determining that Bill 21-14 did not apply to the Tolson site.

### 2.  Bill No. 34-03 Does Not Apply to the Tolson Site.

Bill 34-03 provided specific vehicular access requirements for rubble landfill special exceptions issued after 2003. It is undisputed that the County granted a special exception to the Tolson site, which became effective in 1993, and that the special exception required that "[a]ll truck traffic entering or exiting the site shall be restricted to Race Track [later renamed Capital Raceway Road]." Piney Orchard conceded below that a special

33

exception was granted for the Tolson site for the operation of a rubble landfill. Nevertheless, Piney Orchard maintains that the site failed to comply with the requirements of Bill 34-03 based on the site's access through Capital Raceway Road. We are unpersuaded.

Critically, when the County granted the special exception to the Tolson site in 1993, the Anne Arundel County Board of Appeals expressly considered the access to the site, the applicable county zoning and land use laws, and imposed express conditions on the Tolson site based on those considerations. More specifically, the special exception that was granted in 1993 expressly required that all truck traffic entering or exiting the site shall be restricted to the Capital Raceway Road. As such, the circuit court did not err when it found that Bill 34-03 did not apply to the Tolson site.

We agree with the circuit court that neither Bill 21-14 nor Bill 34-03 applies to the Tolson site. Neither bill operated to invalidate the special exception or applied to the Tolson site retroactively. The circuit court, therefore, did not err in its determination that Bill 21-14 and 34-03 do not apply to the Tolson site.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**